STATE of Wisconsin, Plaintiff-Respondent,

v.

Herman ROLLFINK, Defendant-Appellant,

W.O.W. DISTRIBUTING CO., INC., Defendant.

Supreme Court

*No. 89–1908. Argued March 27, 1991.—Decided May 23, 1991.*

(Also reported in 469 N.W.2d 398.)

124a

For the defendant-appellant there was a brief by *Thomas R. Fahl* and *Flanagan, Sendik & Fahl, S.C.,* Milwaukee and oral argument by *Thomas R. Fahl.*

For the plaintiff-respondent the cause was argued by *Lisa Levin,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

LOUIS J. CECI, J. This case is before the court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats. The certified question is whether a corporate officer has sufficient ownership and control of the corporation, although not directly involved in any wrongdoing, to be held personally liable for violations of Wisconsin's solid and hazardous waste laws by the corporation. We hold that a corporate officer is personally liable for violations of Wisconsin's solid and hazardous waste laws committed by the corporation if the officer is responsible for the overall operation of the corporation's facility which violated the law.

The State of Wisconsin (the state) commenced this action against Herman Rollfink (the defendant) and W.O.W. Distributing Co., Inc. (W.O.W.),[1] seeking, *inter alia,* forfeitures from the defendant for violating secs. 144.44(4)(a) and 144.63, Stats.[2] The state alleged that the defendant violated secs. 144.44(4)(a) and 144.63,

[1]On August 24, 1988, the circuit court approved a stipulation between the state and W.O.W. which settled the state's claims against W.O.W. Therefore, W.O.W. is not before this court in this appeal.

[2]Section 144.44(4)(a), Stats., provides in relevant part as follows:

**144.44 Approval process; operating license. . . .**

**(4)** Operating license. (a) *License requirement.* No person may operate a solid waste facility or hazardous waste facility unless the person obtains an operating license from the department [of natural resources] . . ..

125

respectively, by operating a facility that generated hazardous waste[3] without a license and by operating a facility which did not identify, handle, and dispose of its hazardous waste in the manner required by sec. 144.63.

The defendant appeals from a judgment of the circuit court for Washington county, Richard T. Becker, Circuit Judge. The circuit court granted summary judgment in favor of the state on the issue of the defendant's

---

Section 144.63, Stats., provides:

**144.63 Generation.** Any person generating solid waste shall determine if the solid waste is a hazardous waste. Any person generating hazardous waste shall:

**(1)** Be responsible for testing programs needed to determine whether any material generated by them is a hazardous waste for purposes of ss. 144.60 to 144.74.

**(2)** Keep records that accurately identify:

(a) The quantities of hazardous waste generated;

(b) The hazardous constituents of hazardous wastes which are significant because of quantity or potential harmfulness to human health or the environment; and

(c) The disposition of hazardous wastes.

**(3)** Label any container used for the storage, transport or disposal of hazardous waste to accurately identify its contents and associated hazards.

**(4)** Use appropriate containers for hazardous waste.

**(5)** Furnish information on the general chemical composition of hazardous waste to persons transporting, treating, storing or disposing of hazardous wastes, and on any precautions recommended to ensure safe handling of hazardous waste.

**(6)** Comply with rules relating to use of a manifest system.

**(7)** Submit all reports required under ss. 144.60 to 144.74 and rules promulgated under those sections.

**(8)** Comply with rules relating to notification under s. 144.62(2).

**(9)** Arrange that all wastes generated by them are transported, treated, stored or disposed of at facilities holding a license issued under ss. 144.60 to 144.74 or issued under the resource conservation and recovery act.

[3]What constitutes hazardous waste is determined by the department of natural resources under sec. 144.62(2), Stats.

liability and, after an adversarial hearing on the issue of forfeitures, imposed forfeitures, penalties, and court costs against the defendant in the amount of $9,946.00. In granting summary judgment on the issue of the defendant's liability, the court ruled that the defendant could be held personally liable for violations of secs. 144.44(4)(a) and 144.63, Stats., committed by Pro Specialties, Inc. (PSI), a corporation in which he owned a majority of the stock and served as president, chief executive officer, and chairman of the board. The circuit court reasoned that the defendant's ultimate control of PSI's facility[4] which violated secs. 144.44(4)(a) and 144.63 made him an "operator"[5] of a hazardous waste facility, and operators of hazardous waste facilities are

---

[4]All references to PSI's facility refer to PSI's property located at W194 N11095 Kleinmann Drive in Germantown, Wisconsin. Said property contained PSI's plant which produced products such as paint solvents and insecticides and a waste disposal system which included a leach bed or drainage field.

[5]"Operator" is included in the definition of "person" applicable to secs. 144.44(4) and 144.63. *See* secs. 144.01(9m) and 144.61(9), Stats. Sections 144.44(4) and 144.63 impose obligations on "persons." *See supra,* n.2. At all times relevant to this appeal, "operator" was defined by Wis. Admin. Code sec. NR 181.04(70) (Oct. 1985) as

"the person who is responsible for the overall operation of a hazardous waste facility or recycling facility, or part of a hazardous waste facility or recycling facility."

Effective March 1, 1991, "operator" is defined by Wis. Admin. Code sec. NR 600.03(152) (Feb. 1991) as

"the person who is responsible for the overall operation of a hazardous waste facility or for part of a hazardous waste facility."

The state alleged that the defendant violated secs. 144.44(4)(a) and 144.63, Stats., between 1982 and 1985 inclusively. Accordingly, the only definition of operator applicable to the case at bar

personally liable for violations of ch. 144, Stats.[6]

One issue is presented by this appeal:[7] whether the defendant was an operator of a hazardous waste facility within the meaning of former Wis. Admin. Code sec. NR 181.04(70). We hold that the defendant was an operator within the meaning of sec. NR 181.04(70) because the undisputed evidence in the record shows that he was "responsible for the overall operation"[8] of a hazardous waste facility. Accordingly, we affirm the judgment of the circuit court.

The material facts relevant to this appeal are not in dispute. On June 10, 1987, the state commenced this action against the defendant and W.O.W., seeking, among other things, forfeitures for violations of secs. 144.44(4)(a) and 144.63, Stats. On April 11, 1988, the defendant brought a motion for summary judgment against the state, arguing that he could not be held liable for PSI's violations of secs. 144.44(4)(a) and 144.63 because a corporate officer cannot be held liable for the illegal acts of a corporation unless the corporate officer personally participated in the illegal activity, and the state does not contend that he personally participated in the acts that violated secs. 144.44(4)(a) and 144.63.

---

is the definition formerly set forth in Wis. Admin. Code sec. NR 181.04(70).

[6] *See supra,* nn.2–3.

[7] The defendant also argues in this appeal that the circuit court erred in granting summary judgment because there is a question of fact with respect to the issue of whether PSI violated secs. 144.44(4)(a) and 144.63. The defendant failed to raise this issue in a timely manner in the circuit court. Accordingly, we decline to address the issue. *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980).

[8] Wis. Admin. Code sec. NR 181.04(70).

In support of his motion, the defendant relied in part upon his own affidavit in which he averred that he did not exercise or assume responsibility for the day-to-day operations of PSI's facility and that he did not authorize, permit, supervise, or participate in the disposal of materials in violation of secs. 144.44(4)(a) and 144.63. The defendant also averred that he delegated responsibility for ensuring compliance with hazardous waste laws to his subordinates.

On June 3, 1988, the state filed a motion for summary judgment against the defendant, arguing that the defendant was an operator of a hazardous waste facility because he was responsible for the overall operation of PSI's facility which produced and disposed of hazardous waste. In support of its motion, the state relied in part on affidavits and deposition testimony of former PSI employees and documents concerning PSI's operations and personnel matters.

Hem Vakharia, who served as PSI's Vice President of Research and Development and whose duties included updating PSI's data on hazardous waste, stated in an affidavit that the defendant had general knowledge of the entire operation of PSI's plant and had the power to direct and control all employees. Mr. Vakharia further averred that the defendant would inquire at least weekly, if not daily, of the staff in the shipping and production departments and that the defendant controlled all financial aspects of PSI. For example, Mr. Vakharia averred that the defendant handled all incoming checks and deposits and controlled all expenditures of money, such as making the decision to purchase new machinery or raw chemical supplies. Mr. Vakharia also averred that he was hired by the defendant and that the defendant fired him after he repeatedly informed the defendant and other PSI employees and stockholders that PSI's facility

did not have the capability to legally dispose of its hazardous waste.

The state also relied in part upon the deposition testimony of Janice Finke, who was hired by the defendant to perform administrative functions for PSI, such as processing incoming orders and accounts receivable, keeping sales records, and handling phone contact with sales representatives and customers. Mrs. Finke testified that no financial decision concerning PSI was made without input from the defendant and that the defendant was part of every hiring decision. Mrs. Finke further testified that all checks to pay creditors or payroll were either signed by the defendant or approved by the defendant. Mrs. Finke also testified that the defendant was in charge of such matters as obtaining advertising to sell shares in PSI, paying insurance premiums for the employee benefit plans, and directing an attempt to obtain Small Business Administration funding. Mrs. Finke's deposition also contains the following exchange:

Q: And Mr. Rollfink [the defendant] was the person, while you were there [at PSI] at least, that controlled the operations of the company?

A: He was the principal owner.

The state contended that the above-quoted exchange, along with Mrs. Finke's other testimony, established that the defendant was responsible for the overall operation of PSI's facility.

The state also relied upon the affidavit testimony of Tom Enslin, who was hired by the defendant as a chemist for PSI and whose duties included processing safety data for the chemicals PSI used in the production process. Mr. Enslin averred that the defendant was present at PSI's facility almost every day and that the defendant frequently inspected the production area. Mr. Enslin fur-

ther averred that the defendant spoke with him about product formulations, quality, and consistency a few times a week. Mr. Enslin's affidavit concludes with the following statement:

> While [the] defendant [Herman Rollfink] did have various business partners at times, there is no doubt that he had the ultimate authority and control over the facility. If there were any questions or concerns about an order or product or operational aspect, I knew that defendant Rollfink was the one who would make the ultimate decision as to the resolution of the problem. He supervised the employes, Mark Slane [PSI's plant manager whose duties included production and waste disposal], Gary Umhoefer [PSI employee personally involved in production of PSI products and disposal of the hazardous waste in question], all office staff and myself [PSI chemist involved in quality control and safety, including information on hazardous waste].

The state also offered evidence to support the statements of former PSI employees that the defendant was responsible for the overall operation of PSI's facility. For example, the state relied in part upon the resignation letters of Ron Martenet and John McDonald.[9] The record shows that Mr. Martenet was hired by the defendant to ensure PSI's compliance with all state and federal environmental laws. In his resignation letter, Mr. Martenet stated:

> You [the defendant] have made it clear that you intend to operate manufacturing operations yourself without consultation with me, and have made most major decisions affecting performance yourself,

---

[9]It is undisputed that all the former PSI employees whose testimony the state relied upon were interviewed and hired by the defendant.

thereby negating my effectiveness to the organization.

Mr. McDonald, who was hired by the defendant as PSI's Executive Vice President and was a member of the board of directors as well as a minority shareholder in PSI, stated in his resignation letter:

As you [the defendant] have made clear in the past, I have utterly no control practically or legally over the affairs of Pro-Specialties, Inc. and, therefore, I will hold you entirely responsible with respect to the same.

The state also relied upon letters that proved that the defendant handled disputes with vendors, as well as collection matters with customers.

The circuit court heard both motions for summary judgment on June 21, 1988. By decision dated September 16, 1988, the circuit court denied the defendant's motion for summary judgment, granted summary judgment to the state on the issue of the defendant's violation of secs. 144.44(4)(a) and 144.63, Stats., and ordered a hearing on the issue of the amount of the forfeiture the defendant should be assessed. In granting summary judgment in favor of the state and against the defendant, the circuit court noted that there was no dispute that secs. 144.44(4)(a) and 144.63 were violated and that the only issue raised by the motions for summary judgment was the defendant's personal liability for the violations. The circuit court reasoned that the defendant could be held personally liable as an operator for PSI's violations of secs. 144.44(4)(a) and 144.63 because the undisputed evidence proved that the defendant knew of the hazardous waste problems prior to the opening of the PSI plant in question, that the defendant was ultimately responsible for the operation of PSI, and that the defendant com-

pletely controlled PSI's operations.[10]

On October 10, 1988, the defendant moved the circuit court to reconsider its decision to grant summary judgment against the defendant. The circuit court heard the motion for reconsideration on November 16, 1988. By order dated February 1, 1989, the circuit court denied the defendant's motion for reconsideration. The circuit court conducted a hearing on the issue of forfeitures on June 7, 8, and 9, 1989. On August 25, 1989, the circuit court entered judgment against the defendant and ordered him to pay $9,946.00 in forfeitures, penalties, and court costs.

The defendant appealed from the judgment of the circuit court, and the court of appeals certified the appeal to this court.

The only issue before this court is whether the circuit court properly granted summary judgment in favor of the state on the issue of the defendant's liability for PSI's violations of secs. 144.44(4)(a) and 144.63, Stats. In reviewing the grant of a motion for summary judgment, an appellate court applies the standards set forth in sec. 802.08(2), Stats., in the same manner as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). When evaluating the propriety of a grant of summary judgment, a court employs a two-step procedure. First, it examines the pleadings to determine if a claim for relief has been stated. If a claim for relief has been stated, the court then determines if there are any triable issues as to any

---

[10]The circuit court also relied upon the fact that the defendant owned at least 51 per cent of PSI's stock during at least 22 of the 38 months in question and that during that time he was president, chairman of the board, and chief executive officer of PSI.

material fact which preclude a grant of summary judgment. *Id.* at 314–15. If there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should be granted. Section 802.08(2), Stats.

The state's complaint states a claim upon which relief may be granted. Accordingly, determining whether the circuit court properly granted summary judgment in favor of the state turns on whether there are any genuine issues of material fact. The defendant contends that there is a genuine issue of fact as to whether he was an operator of a hazardous waste or recycling facility within the meaning of Wis. Admin. Code sec. NR 181.04(70).

We disagree. Former Wis. Admin. Code sec. NR 181.04(70) defines "operator" as:

> the person who is responsible for the overall operation of a hazardous waste facility or recycling facility, or part of a hazardous waste facility or recycling facility.

The defendant argues that he was not the "operator" of PSI's facility because he was not responsible for its overall operation. To support his position, the defendant relies on his own affidavit which he filed in support of his summary judgment motion in the circuit court. The defendant's statement does not create triable issues of fact which preclude summary judgment. *Hopper v. Madison,* 79 Wis. 2d 120, 130, 256 N.W.2d 139 (1977); *see also Fritz v. McGrath,* 146 Wis. 2d 681, 689 n.3, 431 N.W.2d 751 (Ct. App. 1988) (listing statements which are conclusory and thus inadmissible for the purpose of defeating a motion for summary judgment).

The other statements contained in the defendant's affidavit are irrelevant. For example, the defendant averred that he did not authorize, permit, supervise, or

134

participate in the disposal of materials in violation of secs. 144.44(4)(a) and 144.63, Stats., and that he delegated responsibility for waste disposal to his subordinates.

■

The state seeks to hold the defendant liable as an "operator," a person "responsible for the overall operation" of all or part of a hazardous waste facility or recycling facility. Wis. Admin. Code sec. NR 181.04(70). A person need not personally authorize, participate in, or supervise violations of ch. 144, Stats., in order to be responsible for the overall operation of a hazardous waste facility.

■

Moreover, the defendant's delegation of some responsibilities does not prove that he was not responsible for the overall operation of PSI's facility. Rather, since delegation is done by those with a broad range of responsibilities, the delegation shows that the defendant was responsible for the overall operation of PSI's facility. Therefore, the defendant's statements do not preclude summary judgment because they are irrelevant to the state's theory of liability. *Griebler v. Doughboy Recreational,* 160 Wis. 2d 547, 552 n.2, 466 N.W.2d 897 (1991).

In contrast to the defendant's affidavit, the state submitted the following evidentiary facts which proved that the defendant was responsible for the overall operation of PSI's facility:

— The defendant interviewed and hired employees.

— The defendant had the power to direct and control all employees, including those in charge of waste disposal.[11]

---

[11]The defendant averred that he did not supervise the

- The defendant was present at PSI's facility almost every day, inspected the production area frequently, and inquired of the production and shipping departments on a weekly, if not a daily, basis.

- The defendant fired an employee who informed him that PSI's waste disposal methods were illegal.

- The defendant's constant intervention in the operation of PSI's facility prompted the resignation of two employees, including an employee to whom the defendant claimed to delegate the responsibility of ensuring PSI's compliance with hazardous waste laws.

- The defendant ultimately made all decisions and resolved all problems concerning the operation of PSI's facility and had ultimate authority and control over the facility.

- The defendant had general knowledge of the entire operation of PSI's facility.

- The defendant made all financial decisions concerning PSI's facility.

employees who were responsible for hazardous waste disposal. However, his statement to that effect does not preclude summary judgment because it is conclusory. *Hopper,* 79 Wis. 2d at 130.

Moreover, the defendant failed to dispute the statements of former employees that he participated in the hiring of all employees, had the power to direct and control all employees, inquired of the employees on a weekly if not a daily basis, intervened in the operation of PSI's facility, and fired an employee who persistently informed him that PSI's facility could not legally dispose of its hazardous waste. These evidentiary facts prove that the defendant supervised all employees, including those responsible for the disposal of hazardous waste.

— The defendant handled disputes with vendors and customers.

The affidavit and deposition testimony from which this summary is derived is set forth in detail *supra,* at 129–132, 469 N.W.2d at 401–402.

█ The defendant failed to dispute the evidentiary facts set forth above. Instead, he relied upon the irrelevant statements, legal conclusions, and statements of ultimate fact discussed above. The undisputed facts in the record show that the defendant had control over all aspects of PSI's operations and was responsible for the overall operation of PSI's facility.

█ Furthermore, implicit in the defendant's statement that he delegated responsibility for hazardous waste disposal to his subordinates is an admission that he was responsible for the overall operation of PSI's facility. If the defendant was not responsible for the overall operation of PSI's facility, he would not have had the authority to delegate responsibility for hazardous waste disposal to his subordinates. Therefore, the circuit court properly concluded that there was no genuine issue of fact as to whether the defendant was responsible for the overall operation of PSI's facility.

The defendant contends that even if he were responsible for the overall operation of PSI, he is not an operator within Wis. Admin. Code sec. NR 181.04(70) because PSI did not operate a "hazardous waste facility" or "recycling facility," and an operator within the meaning of sec. NR 181.04(70) is the person who is responsible for the overall operation of all or part of a hazardous waste facility or a recycling facility. We disagree.

Former Wis. Admin. Code sec. NR 181.04(46) (Oct. 1985)[12] states that "hazardous waste facility" has the meaning specified in sec. 144.61(5m), Stats.

Section 144.61(5m) defines "hazardous waste facility" as:

> a site or structure for the treatment, storage or disposal of hazardous waste and includes all of the contiguous property under common ownership or control surrounding the site or structure.

The defendant argues that since PSI's facility served other purposes besides storing and disposing of wastes, such as the production of products, it cannot be a "hazardous waste facility." We disagree.

On its face, the definition of "hazardous waste facility" contemplates inclusion of facilities which serve purposes other than hazardous waste treatment, storage, and disposal when it states that a "hazardous waste facility" includes:

> all of the contiguous property under common ownership or control surrounding the site or structure [used for the treatment, storage or disposal of hazardous waste].

In the case at bar, the site or structure for the treatment, storage, and disposal of hazardous waste was a sump, septic tank, and seepage pit. The contiguous property surrounding the site or structure was PSI's plant which produced products such as paint solvents, insecticides, disinfectants, herbicides, and automotive maintenance supplies.

---

[12]Effective March 1, 1991, sec. NR 181.04(46) was renumbered NR 600.03(90).

138

Thus, on its face, the definition of "hazardous waste facility" includes PSI's facility,[13] and the undisputed facts in the record show that PSI stored and disposed of hazardous waste at its facility.[14] Accordingly, PSI's facility was a hazardous waste facility within the meaning of sec. 144.61(5m), Stats.

Moreover, PSI's facility was also a recycling facility under the definition of recycling facility applicable to ch. 144, Stats. Former Wis. Admin. Code sec. NR 181.04(78r) (Oct. 1985)[15] defined "recycling facility" as:

> a treatment facility where hazardous waste is recycled *and may include a facility where hazardous waste has been generated.*

(Emphasis added.) The undisputed facts in the record show that PSI's facility generated hazardous waste and, therefore, may be considered a recycling facility within the meaning of former sec. NR 181.04(78r).

Accordingly, we conclude that the undisputed facts in the record establish that the defendant was, at all times relevant herein, the operator of PSI's facility

[13]Furthermore, accepting the defendant's argument that "hazardous waste facility" does not include facilities that serve purposes other than the treatment, storage, or disposal of hazardous waste would defeat one of the legislative purposes of ch. 144, Stats.: to ensure that generators of hazardous waste properly dispose of the waste they generate. *See* sec. 144.60(2)(c).

[14]The record also contains evidence that suggests that PSI unsuccessfully attempted to treat hazardous waste at its facility by neutralizing its pH.

[15]Effective March 1, 1991, sec. NR 181.04(78r) was renumbered NR 600.03(172).

within the meaning of Wis. Admin. Code sec. NR 181.04(70).[16] Thus, the circuit court properly held the defendant personally liable for the violations of secs. 144.44(4)(a) and 144.63, Stats.

In concluding that the defendant was an operator within the meaning of Wis. Admin. Code sec. NR 181.04(70), we do not hold or imply that every corporate officer or majority shareholder is subject to personal liability for violations of ch. 144, Stats., committed by the corporation. The test of liability under sec. NR 181.04(70) is that of responsibility for the overall operation of the facility in question. We hold that a corporate officer is personally liable for violations of ch. 144 committed by the corporation if the officer is responsible for the overall operation of the corporation's facility which violated the provisions of ch. 144.[17] In the case at bar, the corporate officer/defendant was responsible for the

---

[16]Since we conclude that the defendant is liable as an operator, we decline to address whether the defendant, as PSI's majority shareholder, could be held liable for the PSI facility's violations of secs. 144.44(4)(a) and 144.63, Stats., as its owner under sec. 144.01(9), Stats. *Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (holding that a Wisconsin appellate court need not decide an issue if the resolution of another issue is dispositive).

[17]Since the state seeks to hold the defendant liable as an operator of a hazardous waste facility within the meaning of Wis. Admin. Code sec. NR 181.04(70), the defendant's arguments regarding vicarious liability of corporate officers for acts of their corporations at common law are not relevant to this appeal. The state does not seek to hold the defendant "vicariously liable" in the traditional sense of that term. Rather, the state seeks to hold the defendant liable for operating a hazardous waste facility which is not in compliance with secs. 144.44(4)(a) and 144.63, Stats. Thus, the defendant's liability is dependent on his own act

overall operation of a hazardous waste facility and, therefore, is personally liable for operating the facility in violation of secs. 144.44(4)(a) and 144.63, Stats.

*By the Court.*—The judgment of the circuit court is affirmed.

## *ORDER*

*ON MOTION FOR RECONSIDERATION.* As the defendant correctly notes, the state alleged that he operated a solid waste facility, not a hazardous waste facility. However, the definition of "operator" set forth in Wis. Admin. Code sec. NR 181.04(70)—the person responsible for the overall operation of a facility—is still applicable to him even though the definition is phrased in terms of "hazardous waste facility."

We reach this conclusion for five reasons. First, the plain language of secs. 144.44(4)(a) and 144.63, Stats., indicates that operators of solid and hazardous waste facilities should be defined uniformly. Both sections impose the same duties on operators of solid and hazardous waste facilities without making any meaningful distinction between them.[1]

Second, both the solid and hazardous waste provisions of ch. 144, Stats., relate to the same subject matter:

---

of operating the hazardous waste facility and, therefore, is not vicarious liability in the traditional sense.

[1] Section 144.44(4)(a) provides in relevant part that "[n]o person may operate a solid waste facility or hazardous waste facility unless the person obtains an operating license from the department . . .." Section 144.63 provides in relevant part that "[a]ny person generating solid waste shall determine if the solid waste is a hazardous waste." The definition of "person" includes an operator. *See* secs. 144.01(9m) and 144.61(9), Stats.

managing wastes in order to protect the environment. Therefore, they should be construed consistently. *Logerquist v. Nasewaupee Canvassers,* 150 Wis. 2d 907, 913, 442 N.W.2d 551 (Ct. App. 1989) ("Statutes relating to the same subject matter are to be construed together and harmonized in order to give each statute full force and effect.").

Third, the legislature amended sec. 144.44(4)(a), Stats., after the department of natural resources (the DNR) promulgated Wis. Admin. Code sec. NR 181.04(70) without providing a different definition of operator for solid, as opposed to hazardous, waste facilities. The legislature is presumed to have full knowledge of existing laws and administrative agency regulations when it enacts new laws. *Kindy v. Hayes,* 44 Wis. 2d 301, 314, 171 N.W.2d 324 (1969). Therefore, it is reasonable to utilize the definition of operator applicable to hazardous waste facilities to define who is an operator of a solid waste facility.

Fourth, if this court accepts the defendant's argument that Wis. Admin. Code sec. NR 181.04(70) does not apply to him, no person could be held liable as an operator for violating ch. 144's provisions regarding solid waste prior to February, 1988, when a definition of operator expressly applicable to solid waste violations was published by the DNR at Wis. Admin. Code sec. NR 500.03(92). Such an absurd result should be avoided. *State v. Clausen,* 105 Wis. 2d 231, 246, 313 N.W.2d 819 (1982) ("statutes cannot be construed in derogation of common sense").

Fifth, sec. 144.44(4)(a), Stats., clearly imposes obligations on operators of solid as well as hazardous waste facilities, and acceptance of the defendant's argument

would have the effect of allowing the administrative code to eliminate the imposition of said obligations on operators of solid waste facilities by defining operator to include only operators of hazardous waste facilities. Administrative regulations have no such power.

Therefore, we conclude that Wis. Admin. Code sec. NR 181.04(70) provides the definition of operator applicable to the case at bar: a person responsible for the overall operation of a solid or hazardous waste facility. Accordingly, we deny the defendant's motion for reconsideration.

IT IS ORDERED that the motion for reconsideration is denied, without costs.

Marilyn L. Graves
Clerk of Supreme Court