John W. DeBeck, Petitioner-Respondent,

v.

Wisconsin Department of Natural Resources,
Respondent-Appellant.†

Court of Appeals

*No. 91-1434. Submitted on briefs February 5, 1992.—Decided
November 12, 1992.*

(Also reported in 493 N.W.2d 234.)

† Petition to review denied.

For the respondent-appellant the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Maryann Sumi,* assistant attorney general.

For the petitioner-respondent the cause was submitted on the brief of *Michael P. Dunn* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J. This is an appeal from an order partially vacating two administrative orders of the Department of Natural Resources (DNR). The circuit court vacated the orders because it concluded that the DNR had based the orders on an administrative rule which conflicted with a statute. We agree with the trial court and therefore affirm.

In 1972, after obtaining approval from the DNR, John DeBeck opened a landfill in the town of Middleton, Dane county. In 1982, he transferred the landfill to Refuse Hideaway, Inc., a corporation of which DeBeck is president. In 1987, the DNR tentatively approved a closure plan for the landfill. In early 1988, several wells near the landfill tested positive for contaminants. DeBeck and the DNR entered a special consent order which required closure of the landfill. The order reserved to the DNR the right to modify the order and provided that "[n]othing in this order shall be construed as an admis-

sion of liability on the part of John DeBeck personally, or Refuse Hideaway, Inc., for any purpose . . .."

On September 6, 1988, the DNR issued an order tentatively approving the landfill closure plan. But the order also stated that both "John DeBeck and Refuse Hideaway, Inc., own and formerly operated a [landfill]." DeBeck petitioned for judicial review of this order, contending that he could not be held personally responsible to comply with the order. After a remand for further findings, the DNR issued an additional order on February 21, 1990, in which it asserted that it intended to impose personal liability on DeBeck. It grounded its authority to do so on Wis. Adm. Code sec. NR 500.03, which provides in part:

> (92)   "Operator" has the meaning specified in s. 144.442(9), Stats.
>
> . . ..
> (94)   "Owner" has the meaning specified in s. 144.442(9), Stats.

DeBeck petitioned for judicial review of the September 6, 1988 order and the February 21, 1990 order. The circuit court agreed with DeBeck's assertion that the dispositive definition of a landfill "owner" was found in sec. 144.01(9), Stats. That subsection provides: " 'Owner' means the state, county, town, town sanitary district, city, village, metropolitan sewerage district, corporation, firm, company, institution or individual owning or operating any water supply, sewerage or water system or sewage and refuse disposal plant." The court recognized that sec. 144.442(9), Stats., entitled "RECOVERY OF EXPENDITURES," contains more expansive definitions of "operator" and "owner" which would include DeBeck personally. But the court concluded that those definitions were applicable only to sec. 144.442(9),

because that subsection provides: "(a) *Definitions. In this subsection*: 1. 'Operator' means . . .. 2. 'Owner' means . . .." (Emphasis added.)

The circuit court reasoned that the legislature was well aware of the two definitions of an "owner" of a landfill and had reserved the more extensive version for actions to recover expenses for environmental repair. Therefore, the DNR's attempt to apply the more extensive version to all of ch. 144, Stats., conflicted with the legislature's decision to apply that version only to actions to recover expenditures. The court concluded that the DNR lacked authority to hold DeBeck personally responsible for complying with the terms of the September 6, 1988 and February 21, 1990 orders.

## STANDARD OF REVIEW

Section 227.40(4)(a), Stats., provides three bases which a court may use to declare an administrative rule invalid: (1) if the rule violates the constitution; (2) if it exceeds the statutory authority of the agency adopting it; or (3) if it was adopted without compliance with statutory rulemaking procedures. *LeClair v. Natural Resources Bd.*, 168 Wis. 2d 227, 233, 483 N.W.2d 278, 281 (Ct. App. 1992). DeBeck's attack on Wis. Adm. Code sec. NR 500.03(92) and (94) falls under the "exceeds the statutory authority of the agency" part of, sec. 227.40(4)(a).

The DNR asserts that Wisconsin law does not precisely define the appropriate standard of review for "exceeds statutory authority" challenges. It argues that we should use the standard used for the "violates constitutional provisions" portion of sec. 227.40(4)(a), Stats. The supreme court discussed that standard in *Liberty*

*Homes, Inc. v. DILHR,* 136 Wis. 2d 368, 374-75, 401 N.W.2d 805, 808 (1987). At least in a substantive due process challenge of a rule, the standard of review we are to use is whether the rule bears a reasonable relation to a legitimate governmental objective. *Id.*

■

In *State v. McManus,* 152 Wis. 2d 113, 447 N.W.2d 654 (1989), the supreme court did not discuss the standard of review it would use in a statute-rule conflict. However, it is clear that it used a *de novo* standard. In *Wisconsin Hosp. Ass'n v. Natural Resources Bd.,* 156 Wis. 2d 688, 705, 457 N.W.2d 879, 886 (Ct. App. 1990), we concluded that "exceeds statutory authority" questions are matters of statutory interpretation or construction, and, therefore, our review was *de novo.* In *Wisconsin Hosp. Ass'n,* the DNR argued that we should defer to its practical interpretation of the enabling statute. We declined to decide whether this was an appropriate standard of review. The DNR has now abandoned this argument in its attempt to apply its rules to DeBeck. We conclude that a *de novo* standard of review should be used in "exceeds statutory authority" cases under sec. 227.40(4)(a), Stats.

## DECISION

The question we face is whether the DNR's definitions of "operator" and "owner," found in Wis. Adm. Code sec. NR 500.03(92) and (94), conflict with the definition of "owner" found in sec. 144.01(9), Stats.

To determine whether an administrative agency has exceeded its statutory authority in promulgating a rule, we look to the enabling statute to determine if there is express or implied authorization for the rule. *In Interest of A.L.W.,* 153 Wis. 2d 412, 417, 451 N.W.2d 416, 418 (1990). The DNR identifies secs. 144.431(1)(a) and

144.435(1), Stats., as the enabling statutes upon which it relies.

Section 144.431, Stats., provides in relevant part:

(1) The department shall:
(a) Promulgate rules implementing and consistent with ss. 144.43 to 144.47.

Section 144.435, Stats., provides in relevant part:

(1) The department shall promulgate rules establishing minimum standards for the location, design, construction, sanitation, operation, monitoring and maintenance of solid waste facilities. Following a public hearing, the department shall promulgate rules relating to the operation and maintenance of solid waste facilities as it deems necessary to ensure compliance and consistency with the purposes of and standards established under the resource conservation and recovery act . . ..

DeBeck agrees that the trial court correctly determined that these statutes impliedly authorized the DNR to promulgate Wis. Adm. Code sec. NR 500.03(92) and (94). Thus the question becomes whether those rules, defining "operator" and "owner," conflict with the legislative definition of "owner" found in sec. 144.01(9), Stats.

"[A]ny doubts as to the implied power of an agency are to be resolved against the existence of authority." *Trojan v. Board of Regents of Univ. of Wis. Sys.*, 128 Wis. 2d 270, 277, 382 N.W.2d 75, 78 (Ct. App. 1985). The DNR objects to this rule because, in its view, when we use this rule, we ignore the presumption that administrative rules have the same force of law as statutes. We disagree. Administrative rules are equal to statutes in their power to regulate behavior. But administrative

agencies do not have powers superior to those of the legislature. When a conflict occurs between a statute and a rule, the statute prevails. *Richland School Dist. v. DILHR*, 166 Wis. 2d 262, 278, 479 N.W.2d 579, 586 (Ct. App. 1991), *review granted*, No. 90-1750 (Apr. 7, 1992). "An agency charged with administering a law may not substitute its own policy for that of the legislature." *Niagara of Wis. Paper Corp. v. DNR*, 84 Wis. 2d 32, 48, 268 N.W.2d 153, 160 (1978). Though the DNR attempts to equate rules with statutes and then analyzes this case as a conflict between statutes, that analysis must fail because *Richland* and *Niagara* would be meaningless under such an analysis.

Section 144.01(9), Stats., applicable to all of ch. 144, Stats., defines "owner" in the present tense. Though the present tense of a verb includes the future, sec. 990.001(3), Stats., the legislature has not provided that the use of the present tense in the statutes includes the past. Thus, sec. 144.01(9) does not include past owners of landfills.

We find further support for this position in sec. 144.442(9)(a)1. and 2., Stats. We do not rely on the fact that subsecs. (92) and (94) of Wis. Adm. Code sec. NR 500.03 were adopted verbatim from sec. 144.442(9)(a)1. and 2. That is merely evidence that the DNR was aware that these sections are more inclusive in their definitions of "operator" and "owner" than sec. 144.01(9), Stats. We consider the former definitions because they show that the legislature was aware of the difference between the sec. 144.01(9) definition of "owner" and the definition found in sec. 144.442(9)(a)1. and 2. We so conclude because the legislature specifically limited the more expansive use of the definitions to "In this subsection," i.e., sec. 144.442(9), Stats. That subsection pertains to recovery of expenditures, a topic which the DNR admits

is not the subject of this lawsuit. We are to resolve doubts as to the implied power of an agency against the existence of authority. *Trojan*, 128 Wis. 2d at 277, 382 N.W.2d at 78.

The DNR argues that even if our analysis is correct, common law nuisance law provides the remedy it seeks against DeBeck. It cites *State v. Mauthe*, 123 Wis. 2d 288, 366 N.W.2d 871 (1985), and *State v. Rollfink*, 162 Wis. 2d 121, 469 N.W.2d 398 (1991), as examples of cases where the court imposed common law liability on appropriate corporate officers. We disagree. *Mauthe* held that a person (not a corporate officer) who owned land was liable for a hazardous substance spill that occurred on the land because sec. 144.76(3), Stats., provides:

> A person who possesses or controls a hazardous substance which is discharged or who causes the discharge of a hazardous substance shall take the actions necessary to restore the environment to the extent practicable and minimize the harmful effects from the discharge to the air, lands or waters of this state.

*Mauthe* was decided by interpreting a statute. The applicable statute in that case bears no resemblance to sec. 144.01(9), Stats. *Mauthe* does not support the DNR's assertions.

*Rollfink* involved the question whether, under the definition of "operator" found in former Wis. Adm. Code sec. NR 181.04(70), a corporate officer could be assessed forfeitures for violations of ch. 144, Stats. That rule defined "operator" as "the person who is responsible for the overall operation of a hazardous waste facility or recycling facility, or part of a hazardous waste facility or recycling facility." *Rollfink*, like *Mauthe*, involved a question of statutory (or rule) interpretation. The rule

389

involved was unlike sec. 144.01(9), Stats. The supreme court did not discuss the effect of sec. 144.01(9), nor did it need to, for the issue was not a conflict between rule and statute, but the interpretation of a rule. *Rollfink* does not support the DNR's assertions.

The DNR's final argument is that, "regrettably," the financial responsibility provisions of ch. 144, Stats., provide only for routine, predictable, long-term-care expenses of closed landfills, such as soil cover and erosion prevention. Policy considerations, therefore, should provide the basis for a reversal of the trial court's order. But it is the legislature's responsibility to balance the environmental danger of landfills against the need for their existence. Courts should respect the line drawn by the legislature and not substitute their view of the better place to draw that line. The DNR may ask the legislature to pass laws, consistent with our constitutions, which will permit the DNR to impose liability on a greater number of persons. That is a resolution which is better suited to a political system based on separation of powers.

*By the Court.*—Order affirmed.