STATE of Wisconsin, Plaintiff-Respondent,

v.

C. SPIELVOGEL & SONS Excavating, Inc., and Wayne Spielvogel, Defendants-Appellants.†

Court of Appeals

*No. 94–1034. Submitted on briefs February 3, 1995.—Decided April 12, 1995.*

(Also reported in 535 N.W.2d 28.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Arthur J. Harrington* and *Michael B. Apfeld* of *Godfrey & Kahn, S.C.* of Milwaukee; of counsel, *James P. Burnett* of *Lutz, Burnett, McDermott & Jahn* of *Chilton*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Steven B. Wickland*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

SNYDER, J.   C. Spielvogel & Sons Excavating, Inc. (the Company) and Wayne Spielvogel appeal from a judgment holding that the Company and Spielvogel operated a landfill without a license in violation of Department of Natural Resources (DNR) solid waste regulations. The judgment imposed forfeitures jointly and severally against the Company and Spielvogel and granted an injunction requiring them to remove all nonexempt solid waste from the landfill.

Spielvogel argues that the trial court erred because neither he nor his company was the operator of the landfill as a matter of law. In the event we conclude that they were operators, Spielvogel contends that the forfeitures imposed by the trial court were excessive based on the evidence and the trial court erred in granting the injunction because the State failed to show irreparable harm. Because we conclude that Spielvogel and the Company were operators of the landfill and the trial court properly exercised its discretion in imposing the forfeitures and issuing the injunction, we affirm.

## I.

The Company engages in the business of excavation, construction and demolition in and around Sheboygan County. Spielvogel is the president, a director and a one-third shareholder of the Company and is responsible for its daily operations.

The issues in this case relate to the Company's involvement in an unlicensed landfill owned by Audrey Wetor located in the Town of Holland (the Wetor pit). On June 14, 1991, the Company entered into an agreement with Wetor, procured by Spielvogel, whereby the Company agreed to pay Wetor forty cents per yard to remove sand from the pit and forty cents per yard to dump demolition material there. In addition, the Company agreed to level any material it dumped, maintain a locked gate at the entrance to the pit and provide a certificate of insurance. The Company subsequently placed a chain across the entrance to the pit, which was later cut several times and ultimately stolen.

Pursuant to the agreement, the Company began hauling material from various demolition sites to the Wetor pit. Spielvogel believed that the material was exempt from regulation based upon a previous demolition site where a DNR official approved of the on-site burial of similar materials. According to DNR regulations, small demolition landfills where only clean soil, bricks, building stone, concrete, broken pavement and untreated or unpainted wood are disposed are exempt from licensing.[1] *See* WIS. ADM. CODE § NR 500.08(2)(a). However, demolition material containing nonexempt

[1] Although such landfills are exempt from licensing, they still must be operated in a nuisance-free and aesthetic manner, WIS. ADM. CODE § NR 500.08(2), and the operator must obtain a written plan approval pursuant to § NR 502.13.

material—all other solid waste resulting from the demolition or razing of buildings—must be disposed of at a licensed solid waste facility.[2] *See* § 144.44(4)(a), STATS.; WIS. ADM. CODE § NR 500.06.

In August 1991, a DNR investigator visited the Wetor pit and observed Spielvogel leveling demolition waste containing certain nonexempt materials such as irons and metals. The DNR informed Spielvogel that the nonexempt material had to be removed, which Spielvogel agreed to do. The DNR subsequently issued a citation by mail as a result of this incident.

The Company continued to periodically transport waste to the Wetor pit from various sites between late August 1991 and April 9, 1992.[3] On March 27, 1992, a DNR warden observed the Company dump several truckloads of nonexempt solid waste in the Wetor pit, including insulation, metal and painted wood.

On April 2, 1992, upon the DNR's request, the State filed a civil enforcement action against both the Company and Spielvogel, personally, for violations of DNR solid waste regulations seeking injunctive relief and forfeitures. The State's complaint set forth four claims for relief based on four separate violations. The sole claim at issue in this case is the State's allegation that Spielvogel and the Company operated an unlicensed landfill at the Wetor pit since August 1991,

[2] WISCONSIN ADM. CODE § NR 500.03(31) defines "[d]emolition and construction material" as typically consisting of concrete, bricks, wood, glass, masonry, roofing, siding and plaster.

[3] Although Spielvogel now contends that there is no evidence that the Company dumped anything in the Wetor pit after March 30, 1992, the stipulation reached prior to trial was that the dumping continued from late August 1991 through April 9, 1992.

contrary to § 144.44(4)(a), STATS., and WIS. ADM. CODE §
NR 500.06.[4]

After trial to the court, the court found that
Spielvogel had operated the Wetor pit in violation of
the law for a total of 213 days. The court imposed a
forfeiture of $200 per day, which amounted to $42,600
in forfeitures. In addition, the court added a twenty
percent penalty assessment on the forfeitures pursu-
ant to § 165.87(2), STATS., 1991-92, and a five percent
environmental assessment pursuant to § 144.992,
STATS., 1991-92, resulting in a total penalty of $53,250.
The court also granted an affirmative injunction
requiring Spielvogel to remove all nonexempt materi-
als from the Wetor pit to a licensed landfill. The court
imposed joint and several liability against the Com-
pany and Spielvogel for the violations. This appeal
ensued.

## II.

Spielvogel first argues that neither he nor the
Company "operated" the Wetor pit pursuant to
§ 144.44(4)(a), STATS. Rather, he contends that his
Company was merely a transporter of solid waste
material and therefore a customer of Wetor, who
owned the pit and maintained ultimate control.

Whether the Company and Spielvogel were opera-
tors of the Wetor pit requires us to interpret

[4] The complaint also alleged that Spielvogel disposed of
solid waste at an unlicensed landfill owned by Spielvogel, trans-
ported solid waste to unlicensed sites on various dates and
operated a storage facility at the Wetor landfill without a
license. The State dismissed the storage facility claim prior to
trial and the court granted judgment, including injunctive relief
and forfeitures, on the other two claims.

Wisconsin's solid waste laws and administrative rules and apply them to the facts of this case. The interpretation and application of a statute or an administrative rule to a particular set of facts is a question of law that we decide without deference to the trial court. *Armour v. Klecker*, 169 Wis. 2d 692, 697, 486 N.W.2d 563, 565 (Ct. App. 1992).

Spielvogel argues that the definition of "operator" applicable to solid waste disposal law is ambiguous based on changes to the law and recent case law interpreting the term "operator." Spielvogel asserts that penal statutes are to be strictly construed in favor of the defendant, *see State v. Clausen*, 105 Wis. 2d 231, 239, 313 N.W.2d 819, 823 (1982), and if there is any doubt as to whether the act in question is embodied within the statute, all doubts must be resolved in his favor.

In *State v. Rollfink*, 162 Wis. 2d 121, 140a, 475 N.W.2d 575, 582-83, *modifying* 162 Wis. 2d 121, 469 N.W.2d 398 (1991), the supreme court held that for purposes of § 144.44(4)(a), STATS., the definition of an operator of a hazardous waste facility contained in WIS. ADM. CODE § NR 600.03(152) (formerly § NR 181.04(70)) also applies to an operator of a solid waste facility. Therefore, as applied to solid waste facilities, WIS. ADM. CODE § NR 600.03(152)defines an operator as "the person who is responsible for the overall operation of a . . . [solid] waste facility or for part of a . . . [solid] waste facility."

In 1988, however, after the underlying events in *Rollfink* but before the decision was released, the DNR adopted WIS. ADM. CODE § NR 500.03(92), which provides that the term "operator" has the meaning specified in § 144.442(9), STATS., for purposes of solid

waste management. Section 144.442(9)(a)1 defines operator as

> any person who operates a site or facility or who permits the disposal of waste at a site or facility under his or her management or control for consideration, regardless of whether the site or facility remains in operation and regardless of whether the person operates or permits disposal of waste at the time any environmental pollution occurs. This term includes a subsidiary or parent corporation.

Nevertheless, this definition does not have broad application to ch. 144, STATS., generally. In *DeBeck v. DNR*, 172 Wis. 2d 382, 388-89, 493 N.W.2d 234, 237 (Ct. App. 1992), we held that the more expansive definition of operator in § 144.442(9)(a) is specifically limited to actions seeking to recover expenditures for environmental repair under § 144.442(9).

Therefore, we disagree with Spielvogel that the definition of operator is ambiguous. After *DeBeck*, we are left with the supreme court's clear, unambiguous statement regarding the definition of operator in *Rollfink*—the person who is responsible for the overall operation of the facility. We are obviously bound by the decisions of our supreme court.[5] *State v. Kircher*, 189 Wis. 2d 392, 398, 525 N.W.2d 788, 790 (Ct. App. 1994).

---

[5] Spielvogel contends that the definition of "operator" in § 144.442(9), STATS., expands the *Rollfink* definition and requires "the authority or responsibility to control the facility itself." *See State v. Rollfink*, 162 Wis. 2d 121, 475 N.W.2d 575, *modifying* 162 Wis. 2d 121, 469 N.W.2d 398 (1991). For support he relies on dictionary definitions and federal case law interpreting "operator" contained in the federal Comprehensive Environmental Response, Compensation, and Liability Act of

We must therefore determine whether the Company and Spielvogel were "responsible for the overall operation" of the Wetor pit. The trial court made various findings of fact in this regard which we review under the clearly erroneous standard. Section 805.17(2), STATS.

The trial court made the following findings regarding the operation of the Wetor pit:

> Mr. Spielvogel approached Mr. Wetor with the desire to dump waste from a job site that he was presently involved with on the Wetor property. That it was a contract proposed by Mr. Spielvogel through his corporation, bears their letterhead. It appears that it's a contract that was drafted by Mr. Spielvogel or someone at his direction, provides for hauling materials from the pit, dumping rubble and leveling it. Also indicates that he is to "maintain a gate at the entrance, to the east entrance with a lock and key, keys to people requiring them. A certificate of insurance will be forwarded to you by our carrier."

Regarding the role of Spielvogel himself in the operation of the Wetor pit, the trial court found that:

> [Spielvogel] sets the rules of operation. He's the one that indicated that he put up the gate, he set up the lock, he had the keys, he distributed the keys, he made a determination as to when they would dump and when they wouldn't dump or when they would haul from that location. Generally speaking, he made the determination as to where the items would be dumped on the Wetor property. By virtue

---

1980 (CERCLA). *See* 42 U.S.C. § 9607(a)(2). However, because we conclude that *Rollfink* is controlling, we decline to engage in such statutory construction.

of the contract, he agreed to do the leveling. There was virtually no decisions that were made with respect to this operation that was made by anybody other than Wayne Spielvogel on behalf of C. Spielvogel and Sons.

Based on these findings, the trial court held that Spielvogel was the operator of the Wetor pit.

We have independently reviewed the record and cannot conclude that the trial court's findings of fact as to the operation of the Wetor pit are clearly erroneous. Applying these facts to the *Rollfink* definition of operator, therefore, we conclude that the Company and Spielvogel were responsible for the overall operation of the Wetor pit.

Spielvogel next argues that as president of the Company he cannot be held personally liable for forfeitures imposed on the Company by virtue of its illegal operation of the Wetor pit. We disagree. In *Rollfink*, the supreme court held that the test of liability of a corporate officer or majority shareholder is that of responsibility for the overall operation of the facility in question. *Rollfink*, 162 Wis. 2d at 140, 475 N.W.2d at 582. "[A] corporate officer is personally liable for violations of Wisconsin's solid . . . waste laws committed by the corporation if the officer is responsible for the overall operation of the corporation's facility which violated the law." *Id.* at 125, 475 N.W.2d at 576.

Spielvogel argues that his circumstances are substantially different from the corporate president in *Rollfink*, who was present at the facility daily and constantly intervened in the operation of the facility. *See id.* at 136, 475 N.W.2d at 581. By contrast, Spielvogel contends that while he was responsible for the operation of the *Company*, he was at least two levels.

removed from any managerial responsibility of the Wetor pit.

Although Spielvogel stresses his lack of daily presence at the Wetor pit, a person need not personally authorize, participate in or supervise violations of ch. 144, STATS., in order to be responsible for the overall operation of the facility. *See Rollfink*, 162 Wis. 2d at 135, 475 N.W.2d at 580. Based on the trial court's findings that Spielvogel set up the initial contract and made all of the decisions with respect to the operation, we conclude that Spielvogel was responsible for the overall operation of the Wetor pit.

Spielvogel also argues that numerous ordinary indicia of operation are absent in this case, such as the authority to allow others to dump, the authority to prevent others from dumping or the right to maintain a continuous presence there. Further, he did not undertake the responsibility for performing the functions required of landfill operators contained in WIS. ADM. CODE chs. NR 510-524. We expressly reject the notion that every "indicia of operation" must be present in order to be properly considered an operator of a solid waste facility. We agree with the trial court that there were sufficient facts to establish Spielvogel and the Company as operators of the Wetor pit.

Spielvogel also contends that the trial court's holding that the Company is an operator in this case "would impose full-blown licensing requirements on any transporter who exercises the slightest degree of control over the facility . . . and would create a concomitant regulatory nightmare." Such fears are misguided. First, as stated above, there is ample evidence from which to

conclude that the Company was more than a mere "transporter." Second, Spielvogel grossly mischaracterizes the definition of an operator. Liability exists for a person who is "responsible for the overall operation" of a solid waste facility without a license, *see Rollfink*, 162 Wis. 2d at 140a, 475 N.W.2d at 582-83, not for a person who "exercises the slightest degree of control." As we have stated above, the trial court's findings of fact place Spielvogel in the former category, not the latter.

## III.

Spielvogel argues that even if he and the Company were operators of the Wetor pit and sanctions were appropriate, the sanctions imposed by the trial court were significantly overbroad as a matter of law.[6] He first contends that the trial court erred in imposing a penalty for 213 days of operation because the State submitted evidence of only two occasions when the Company dumped nonexempt waste in the pit and there is no evidence that its operation was unlawful for the remaining 211 days. Further, Spielvogel argues that various third parties dumped solid waste at the Wetor pit for which the appellants should not be held responsible.

---

[6] Spielvogel initially contends that under § 144.442(9)(c), STATS., there was no basis for the imposition of sanctions without proof that the demolition waste at the Wetor pit presented "a substantial danger to public health or welfare or the environment." However, as the State correctly points out, § 144.442(9) deals with recovery of expenditures already paid by the State for clean up of waste sites. Therefore, § 144.442(9) is not applicable to this case and does not limit Spielvogel's or the Company's responsibility.

A trial court has a wide range of discretion in fixing the amounts of forfeitures for ch. 144, STATS., violations based on the facts of the individual case. _State v. Schmitt_, 145 Wis. 2d 724, 734, 429 N.W.2d 518, 522 (Ct. App. 1988). In assessing a forfeiture, the trial court may consider economic benefits to the defendant. _See id._ at 734 n.7, 429 N.W.2d at 522. Our review of the record reveals that the trial court did not misuse its discretion in setting the amount of forfeitures.

First, we note that the parties stipulated at trial that Spielvogel periodically deposited material from late August 1991 to April 9, 1992, for a total of 213 days. Second, Roger Klett, a DNR solid waste investigator, testified that the cost of disposing the materials that were dumped at the Wetor pit during the early violations at a licensed landfill would amount to approximately $32,000. Spielvogel paid Wetor approximately $1300 during this time. Third, DNR Warden Mark Pearce testified that, based on his on-site inspections, he estimated that the material dumped by Spielvogel accounted for ninety percent of the total material in the Wetor pit.

Based on this and other evidence, the trial court gave the following rationale for the amount of forfeitures imposed:

> Again, because of the nature of the violations, looking at the amounts that were deposited, recognizing the testimony from Mr. Klett as well as other witnesses as to what would have been required to have been paid if, in fact, he would have dropped off at an approved site, I don't believe that the forfeiture requested for that period of time, two hundred dollars per day, is all unreasonable.

Because the trial court examined the relevant facts, applied a proper view of the law and reached a reasonable conclusion using a demonstrated rational process, we conclude that the court did not erroneously exercise its discretion in the amount of forfeitures imposed. *See id.* at 729, 429 N.W.2d at 520.

As part of the sanctions, the trial court also granted the State's request for an injunction prohibiting further disposal and requiring removal of all nonexempt material from the Wetor pit to licensed landfills. Spielvogel argues that such an injunction is not authorized by general equitable principles because there was insufficient evidence presented by the DNR to indicate irreparable harm.

The grant or denial of injunctive relief is within the discretion of the trial court. *Mercury Records Prods., Inc. v. Economic Consultants, Inc.*, 91 Wis. 2d 482, 500, 283 N.W.2d 613, 622 (Ct. App. 1979). We will not overturn the trial court's discretionary decision absent a showing that the court erroneously exercised such discretion. *Id.*

It is generally true that injunctions are not to be issued without a showing of irreparable harm. *See Werner v. A. L. Grootemaat & Sons, Inc.*, 80 Wis. 2d 513, 520-21, 259 N.W.2d 310, 313-14 (1977). However, a public entity in actions to enforce compliance with the law may obtain an injunction absent a showing of irreparable harm where the law is silent on injury caused. *See County of Columbia v. Bylewski*, 94 Wis. 2d 153, 163, 288 N.W.2d 129, 135 (1980). In *Bylewski*, the supreme court stated:

479

*[W]here a statute, such as § 59.97(11), Stats.*, authorizes a municipality or public entity to seek an injunction in order to enforce compliance with a county zoning ordinance, but says nothing about the injury caused, the municipality is *not* required to show irreparable injury before obtaining an injunction.

*Id.*

Likewise, § 144.98, STATS., 1991-92, authorizes the State to seek an injunction in order to enforce ch. 144, STATS., or any rule, license, plan approval or permit, but makes no mention of harm. Therefore, we conclude that the State need not show irreparable harm as a prerequisite to obtaining an injunction under § 144.98. Accordingly, the trial court did not misuse its discretion in granting the injunction.

*By the Court.*—Judgment affirmed.