# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2015AP2224 |
| COMPLETE TITLE: | Wisconsin Association of State Prosecutors, <br>     Plaintiff-Respondent, <br>   v. <br> Wisconsin Employment Relations Commission, James R. Scott and Rodney G. Pasch, <br>     Defendants-Appellants-Petitioners. <br><br> ------------------------------------------------- <br> Service Employees International Union, Local 150, <br>     Plaintiff-Respondent, <br>   v. <br> State of Wisconsin, Office of State Employment Relations, <br>     Intervenor-Appellant, <br> Wisconsin Employment Relations Commission, James R. Scott and Rodney G. Pasch, <br>     Defendants-Appellants-Petitioners. <br><br> ------------------------------------------------- <br> Wisconsin Association of State Prosecutors, <br>     Plaintiff-Respondent, <br>   v. <br> Wisconsin Employment Relations Commission, <br>     Defendant-Appellant-Petitioner. <br><br> ------------------------------------------------- <br> Service Employees International Union, Local 150, <br>     Plaintiff-Respondent, <br>   v. <br> Wisconsin Employment Relations Commission, <br>     Defendant-Appellant-Petitioner. <br><br> ------------------------------------------------- <br> Service Employees International Union, Local 150, <br>     Plaintiff-Respondent, <br>   v. <br> Wisconsin Employment Relations Commission, <br>     Defendant-Appellant-Petitioner, <br> State of Wisconsin, Office of State Employment Relations, <br>     Intervenor-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 372 Wis. 2d 347, 888 N.W.2d 237
PDC No:  2016 WI App 85 - Published

| | |
|---|---|
| OPINION FILED: | February 28, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 5, 2017 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | John J. DiMotto |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendants-appellants-petitioners, there were briefs filed by *Misha Tseytlin*, solicitor general, with whom on the briefs were *Brad D. Schimel*, attorney general, and *Amy C. Miller*, assistant solicitor general.  There was an oral argument by *Luke Berg*, deputy solicitor general.

For the plaintiffs-respondents, there was a brief filed by *Nathan D. Eisenberg*, *Erin F. Medeiros*, and *The Previant Law Firm, S.C.*, Milwaukee.  There was an oral argument by *Nathan D. Eisenberg*.

**2018 WI 17**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2015AP2224

(L.C. Nos. 2014CV9307, 2014CV9658, 2015CV328, 2015CV329, 2015CV501)

| STATE OF WISCONSIN | : | IN SUPREME COURT |
|---|---|---|

**Wisconsin Association of State Prosecutors,**

       **Plaintiff-Respondent,**

    **v.**

**Wisconsin Employment Relations Commission, James R. Scott and Rodney G. Pasch,**

       **Defendants-Appellants-Petitioners.**

-------------------------------------------------

**Service Employees International Union, Local 150,**

       **Plaintiff-Respondent,**

    **v.**

**State of Wisconsin, Office of State Employment Relations,**

       **Intervenor-Appellant,**

**Wisconsin Employment Relations Commission, James R. Scott and Rodney G. Pasch,**

       **Defendants-Appellants-Petitioners.**

-------------------------------------------------

**FILED**

**FEB 28, 2018**

Sheila T. Reiff
Clerk of Supreme Court

**Wisconsin Association of State Prosecutors,**

        **Plaintiff-Respondent,**

    **v.**

**Wisconsin Employment Relations Commission,**

        **Defendant-Appellant-Petitioner.**

-------------------------------------------------

**Service Employees International Union, Local 150,**

        **Plaintiff-Respondent,**

    **v.**

**Wisconsin Employment Relations Commission,**

        **Defendant-Appellant-Petitioner.**

-------------------------------------------------

**Service Employees International Union, Local 150,**

        **Plaintiff-Respondent,**

    **v.**

**Wisconsin Employment Relations Commission,**

        **Defendant-Appellant-Petitioner,**

**State of Wisconsin, Office of State Employment Relations,**

        **Intervenor-Appellant.**

---

REVIEW of a decision of the Court of Appeals.  *Reversed.*

¶1 ANNETTE KINGSLAND ZIEGLER, J. This is a review of a published decision of the court of appeals, <u>Wis. Ass'n of State Prosecutors v. Wis. Emp't Relations Comm'n</u>, 2016 WI App 85, 372 Wis. 2d 347, 888 N.W.2d 237, [hereinafter "<u>WASP</u>"], affirming the Milwaukee County circuit court's[1] declaration that the Wisconsin Employment Relations Commission ("WERC") exceeded its authority under Wis. Stat. ch. 111 (2013-14)[2] in promulgating Wis. Admin. Code chs. ERC 70 and 80, and the circuit court's subsequent order that WERC hold certification elections for the Wisconsin Association of State Prosecutors ("WASP") and the Service Employees International Union, Local 150 ("SEIU").

¶2 The cause before us consists of five consolidated cases: two petitions for declaratory judgment and writ of prohibition under Wis. Stat. § 227.40 and three petitions for judicial review of an agency decision under Wis. Stat. §§ 227.52 and 227.53. In their petitions for declaratory judgment, SEIU and WASP (collectively "the Unions") sought a declaration that Wis. Admin. Code chs. ERC 70 and 80 were invalid because the requirement that labor organizations file a petition for election as a condition precedent to holding a certification election irreconcilably conflicts with the statutory mandate that WERC hold annual certification elections; consequently, they sought writs of prohibition preventing WERC from enforcing

---

[1] The Honorable John J. DiMotto presided.

[2] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

those rules and refusing to conduct certification elections. The petitions for judicial review of an agency decision then sought orders overturning WERC's decisions to deny certification elections for the Unions on the basis that their petitions for election were not timely filed.

¶3 The circuit court declared Wis. Admin. Code chs. ERC 70 and 80 invalid and issued orders overturning WERC's decisions not to hold certification elections for the Unions. It reasoned that the use of "shall" in Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b) imposes a mandatory duty to hold an annual certification election; that WERC had neither express nor implied power to impose a condition precedent to its statutorily mandated duty; and that such a requirement was unnecessary because an incumbent labor organization has "a real, de facto and legal interest in continued representation." WERC appealed.

¶4 On appeal, WERC argued that the requirement was necessary because, without a petition, it could not otherwise know which labor organizations have an interest in representation, that is, which labor organizations should be included on the ballot. The court of appeals rejected this argument and held that a current representative has a continuing interest in representation. See WASP, 372 Wis. 2d 347, ¶21. The court of appeals then held that "shall" is mandatory in Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b), and that, therefore, making annual elections contingent on the filing of a petition for election is in direct conflict with the legislative mandate. Id., ¶¶19, 23. WERC petitioned for review.

4

¶5    There are two issues on this appeal.  First, we consider whether WERC exceeded its statutory authority under Wis. Stat. ch. 111 when it promulgated Wis. Admin Code chs. ERC 70 and 80.  We conclude that WERC did not exceed its authority because it has express authority under Wis. Stat. ch. 111 to promulgate rules that require a demonstration of interest from labor organizations interested in representing collective bargaining units; consequently, we reinstate WERC's orders dismissing the Unions' petitions for election as untimely.

¶6    Second, we consider the subsidiary issue of whether WERC may decertify a current representative labor organization on September 15 where there are no timely petitions for election filed.  We conclude that WERC may decertify a current representative labor organization on September 15, or at the expiration of the collective bargaining agreement, whichever occurs later, where there are no timely petitions for election filed because the plain language of the statute requires WERC to conduct elections on or before December 1.

¶7    Thus, we reverse the decision of the court of appeals and reinstate WERC's orders dismissing the Unions' petitions for election.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶8    This case arises from Act 10[3] amendments to two subchapters of the Wisconsin Statutes.  The first subchapter at

---

[3] See 2011 Wis. Act 10.

issue governs municipal employment relations and applies to SEIU. See Wis. Stat. §§ 111.70-111.77 [hereinafter "MERA"]. The second subchapter governs state employment labor relations and applies to WASP. See Wis. Stat. §§ 111.81-111.94 [hereinafter "SELRA"]. In particular, we are asked to interpret Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b) to determine whether WERC exceeded its authority under MERA or SELRA when it promulgated Wis. Admin. Code chs. ERC 70 and 80, respectively. Section 111.70(4)(d)3. states in relevant part as follows:

> b. Annually, the commission shall conduct an election to certify the representative of the collective bargaining unit that contains a general municipal employee. The election shall occur no later than December 1 for a collective bargaining unit containing school district employees and no later than May 1 for a collective bargaining unit containing general municipal employees who are not school district employees. The commission shall certify any representative that receives at least 51 percent of the votes of all of the general municipal employees in the collective bargaining unit. If no representative receives at least 51 percent of the votes of all of the general municipal employees in the collective bargaining unit, at the expiration of the collective bargaining agreement, the commission shall decertify the current representative and the general municipal employees shall be nonrepresented. Notwithstanding sub. (2), if a representative is decertified under this subd. 3.b., the affected general municipal employees may not be included in a substantially similar collective bargaining unit for 12 months from the date of decertification. The commission shall assess and collect a certification fee for each election conducted under this subd. 3.b. Fees collected under this subd. 3.b. shall be credited to the appropriation account under s. 20.425(1)(i).

> c. Any ballot used in a representation proceeding under this subdivision shall include the

6

names of all persons having an interest in representing or the results.

§ 111.70(4)(d)3.b., c. Section 111.83(3)(b) states as follows:

Annually, no later than December 1, the commission shall conduct an election to certify the representative of a collective bargaining unit that contains a general employee. There shall be included on the ballot the names of all labor organizations having an interest in representing the general employees participating in the election. The commission may exclude from the ballot one who, at the time of the election, stands deprived of his or her rights under this subchapter by reason of a prior adjudication of his or her having engaged in an unfair labor practice. The commission shall certify any representative that receives at least 51 percent of the votes of all of the general employees in the collective bargaining unit. If no representative receives at least 51 percent of the votes of all of the general employees in the collective bargaining unit, at the expiration of the collective bargaining agreement, the commission shall decertify the current representative and the general employees shall be nonrepresented. Notwithstanding s. 111.82, if a representative is decertified under this paragraph, the affected general employees may not be included in a substantially similar collective bargaining unit for 12 months from the date of decertification. The commission's certification of the results of any election is conclusive unless reviewed as provided by s. 111.07(8). The commission shall assess and collect a certification fee for each election conducted under this paragraph. Fees collected under this paragraph shall be credited to the appropriation account under s. 20.425(1)(i).

§ 111.83(3)(b).[4]

¶9 Under these statutes, WERC is directed to "conduct an election[5] to certify the representative of a collective

---

[4] For the purposes of our review, there are no significant differences in the language of the provisions. See infra ¶41.

bargaining unit." Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b) (footnote added). These statutory provisions address WERC's responsibilities in conducting the election, including its responsibility to certify and decertify a representative.[6] The language of the statutes also requires WERC to include on the ballot "the names of all [labor organizations] having an interest" in representation. §§ 111.70(4)(d)3.c. and 111.83(3)(b).[7] To this end, WERC is authorized to "adopt reasonable [] rules relative to the exercise of its powers and authority and proper rules to govern its proceedings and to regulate the conduct of all elections and hearings." Wis. Stat. §§ 111.71(1), 111.94(1). Under these enabling statutes, WERC promulgated rules to govern the election process, one of which requires that labor organizations interested in representing a bargaining unit file a "petition for election." See Wis. Admin. Code §§ ERC 70.03 and 80.03.

---

[5] "'Election' means a proceeding conducted by the commission in which the employees in a collective bargaining unit cast a secret ballot for collective bargaining representatives, or for any other purpose specified in this subchapter." Wis. Stat. §§ 111.70(1)(e) and 111.81(6).

[6] "'Commission' means the employment relations commission." Wis. Stat. §§ 111.70(1)(c) and 111.81(3).

[7] We further note that Wis. Stat. § 111.83(3)(b) permits WERC to exclude from the ballot any labor organization that "at the time of the election, stands deprived of his or her rights . . . by reason of a prior adjudication of his or her having engaged in an unfair labor practice." § 111.83(3)(b).

¶10 The petition for election at issue here[8] is a two-page form that requires that a labor organization interested in representing a particular bargaining unit (1) provide the contact information of the employer; (2) describe the bargaining unit (i.e., the name and number of employees); (3) provide the termination date and status of the most recent collective bargaining agreement; (4) provide the contact information of anyone who may claim to currently represent the employees; (5) indicate whether the petitioner is the current representative; (6) indicate when the petitioner served a copy of the petition on the employer; (7) provide any additional relevant facts; and (8) provide the contact information for the petitioner. See also Wis. Admin. Code §§ ERC 70.03(6) and 80.03(6).

¶11 The petition also instructs the interested labor organization to submit the petition to WERC, along with the applicable certification fee, and notes that "[p]etition filing is not complete until [WERC] has received both the petition . . . and the required fee." The form itself does not provide a deadline, but the rules do: Wis. Admin. Code §§ ERC 70.03(7)(a) and 80.03(7)(a) state that "[t]o be timely, a petition must be filed on or before September 15"; sections ERC 70.03(2) and 80.03(2) state that "[a] petition is not filed unless it is accompanied by the applicable filing fee

---

[8] The form has changed since 2014. The current version is available at http://werc.wi.gov/doaroot/annual_certification_election_information_sheet.pdf.

established by sub. (4), contains the required signature or signature facsimile, and has been received by [WERC] at its Madison office during normal business hours specified in s. ERC 10.06(1)"; and, Wis. Admin. Code § ERC 10.06(1) provides that "[WERC's] normal business hours at all work locations are 7:45 AM to 4:30 PM, Monday through Friday, excluding legal holidays."

¶12 The rules also prescribe the consequences of a failure to timely file: the existing representative labor organization is decertified either as of September 15 or, if there is a collective bargaining agreement in effect, at the expiration of that bargaining agreement; and the employees in the bargaining unit may not be included in a substantially similar collective bargaining unit for a minimum of one year. See Wis. Admin. Code §§ ERC 70.03(7)(b) and 80.03(7)(b). These rules mirror the consequences in the statute, which apply when a current representative labor organization does not receive at least 51 percent of the votes in an election. See Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b).

¶13 As noted above, the cause before us consists of five consolidated cases. These five cases deal with four petitions for election. Three of the cases were filed by SEIU regarding three petitions for election; specifically, SEIU sought certification as the representative labor organization for Milwaukee Public Schools ("MPS") Building Service Helpers and Food Service Workers, and for St. Francis School District ("SFSD") Custodians. Two of the cases were filed by WASP regarding one petition for election; specifically, WASP sought

10

certification as the representative labor organization for assistant district attorneys in the state of Wisconsin.

### A. SEIU

¶14 SEIU is a "labor organization."[9] As of September 14, 2014, SEIU was the exclusive certified bargaining unit for MPS Building Service Helpers and Food Service Workers. As of September 14, 2014, SEIU was also the exclusive certified bargaining unit for SFSD Custodians. MPS Building Service Helpers and Food Service Workers and SFSD Custodians are "general municipal employees"[10]; SEIU is, therefore, subject to MERA. Additionally, as of September 15, 2014, the MPS Building Service Helpers and Food Service Workers and SFSD Custodians were school district employees,[11] represented by an exclusive representative (SEIU), and not subject to a collective bargaining agreement; SEIU is, therefore, subject to Wis. Admin. Code ch. ERC 70. Wis. Admin. Code § ERC 70.02.

---

[9] "'Labor organization' means any employee organization in which employees participate and which exists for the purpose, in whole or in part, of engaging in collective bargaining with municipal employers concerning grievances, labor disputes, wages, hours or conditions of employment." Wis. Stat. § 111.70(1)(h).

[10] "'General municipal employee' means a municipal employee who is not a public safety employee or a transit employee," Wis. Stat. § 111.70(1)(fm); "'Municipal employee' means any individual employed by a municipal employer other than an independent contractor, supervisor, or confidential, managerial or executive employee," § 111.70(1)(i).

[11] "'School district employee' means a municipal employee who is employed to perform services for a school district." Wis. Stat. § 111.70(1)(ne).

¶15 On September 15, 2014, SEIU filed petitions for election for all three bargaining units, but it did so after WERC's 4:30 p.m. close-of-business deadline, at 5:25 p.m. (Building Service Helpers), 5:27 p.m. (Food Service Workers), and 6:19 p.m. (Custodians). SEIU's certification fees were submitted and received the following day, on September 16, 2014. On October 14, 2014, WERC voted 2—0 not to accept SEIU's petitions for election on the basis that they were not timely filed, and notified SEIU of its vote.

¶16 On November 13, 2014, SEIU filed a petition for declaratory judgment and a petition for writ of prohibition (Case No. 14CV9658)[12] pursuant to Wis. Stat. § 227.40 seeking a declaration that Wis. Admin. Code ch. ERC 70 was invalid because it exceeded WERC's statutory authority, and requesting a writ requiring WERC to conduct certification elections. The petition also sought an order tolling the December 1 statutory deadline for holding certification elections until such elections could be held, and an order that WERC pay SEIU's attorney fees and costs.

¶17 On November 14, 2014, WERC issued Commission's Decision No. 35447, Order Dismissing Petitions for Annual Certification Election (regarding MPS Building Service Helpers and Food Service Workers), and Commission's Decision No. 35446,

---

[12] These petitions were filed against WERC as well as against James R. Scott and Rodney Pasch——the commissioners of WERC at the time——in their individual and official capacities.

12

Order Dismissing Petition for Annual Certification Election (regarding SFSD Custodians).[13] SEIU filed a petition with WERC for rehearing regarding these dismissals pursuant to Wis. Stat. § 227.49, but WERC denied rehearing.

¶18 As of December 1, 2014, WERC had not conducted a certification election for MPS Building Service Helpers, MPS Food Service Workers, or SFSD Custodians because no union had expressed interest in representing them by the September 15 deadline. As a result, SEIU was treated as decertified by WERC, MPS, and SFSD as of September 15, 2014.

¶19 On January 15, 2015, SEIU filed two petitions for judicial review (Case Nos. 15CV328 and 15CV329) pursuant to Wis. Stat. §§ 227.52 and 227.53 seeking an order setting aside WERC's decisions to deny SEIU certification elections. SEIU's petitions also sought orders tolling the December 1 statutory

---

[13] The parties briefly acknowledge that the Unions may have had a justiciability issue. There are four prerequisites a party must satisfy to seek declaratory relief: (1) a justiciable controversy must exist; (2) the controversy must be between persons whose interests are adverse; (3) the plaintiff must have a legally protectable interest in the controversy; and (4) the issue must be ripe for determination. See Loy v. Bunderson, 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982). The justiciability issue here is with respect to the fourth prerequisite because the Unions filed their petitions before WERC issued its official decision and order. For declaratory judgment and injunctive relief, however, the standard for ripeness is lower: harm may be anticipatory, if imminence and practical certainty of act or event exist. See Putnam v. Time Warner Cable of Se. Wis., Ltd., 2002 WI 108, ¶¶43-46, 255 Wis. 2d 447, 649 N.W.2d 626. Given that WERC advised the Unions of its October 14 vote, this standard is met and the issue was justiciable.

deadline for holding certification elections until such elections could be held, and that WERC pay SEIU's attorney fees and costs.

B. WASP

¶20 WASP is a "labor organization."[14] As of September 14, 2014, WASP was the exclusive certified bargaining representative for all assistant district attorneys in Wisconsin. Assistant district attorneys in Wisconsin are state "employees"[15]; WASP is, therefore, subject to SELRA. Additionally, as of September 15, 2014, the bargaining unit for state assistant district attorneys was a general state employee bargaining unit, as defined in Wis. Stat. § 111.825,[16] represented by an exclusive representative;

---

[14] "'Labor organization' means any employee organization whose purpose is to represent employees in collective bargaining with the employer, or its agents, on matters that are subject to collective bargaining under s. 111.91(1) or (3), whichever is applicable . . . ." Wis. Stat. § 111.81(12).

[15] "'Employee' includes: . . . [a]ssistant district attorneys, except supervisors, management employees and individuals who are privy to confidential matters affecting the employer-employee relationship." Wis. Stat. § 111.81(7)(c).

[16] Wisconsin Stat. § 111.825 states in relevant part as follows:

> (2) Collective bargaining units for employees in the unclassified service of the state shall be structured with one collective bargaining unit for each of the following groups: . . .

> (d) Assistant district attorneys.

Wis. Stat. § 111.825(2)(d).

14

WASP is, therefore, subject to Wis. Admin. Code ch. ERC 80. Wis. Admin. Code § ERC 80.02(1).

¶21 On September 15, 2014, WASP filed a petition for election for certification for this bargaining unit, but it did so after WERC's 4:30 p.m. close-of-business deadline, at 5:46 p.m. WASP's certification fee was submitted and received the following day, on September 16, 2014. On October 14, 2014, WERC voted 2—0 not to accept WASP's petition for election on the basis that it was not timely filed, and notified WASP of its vote.

¶22 On November 11, 2014, WASP filed a petition for declaratory judgment and a petition for writ of prohibition (Case No. 14CV9307)[17] pursuant to Wis. Stat. § 227.40 seeking a declaration that Wis. Admin. Code ch. ERC 80 was invalid because it exceeded WERC's statutory authority, and requesting a writ requiring WERC to conduct certification elections. The petition also sought an order tolling the December 1 statutory deadline for holding certification elections until such elections could be held, and an order that WERC pay WASP's attorneys fees and costs.

¶23 On November 14, 2014, WERC issued Commission's Decision No. 35445, Order Dismissing Petition for Annual Certification Election.[18] WASP filed a petition with WERC for

---

[17] These petitions were filed against WERC as well as against James R. Scott and Rodney Pasch——the commissioners of WERC at the time——in their individual and official capacities.

[18] See supra note 13.

rehearing regarding this dismissal pursuant to Wis. Stat. § 227.49, but WERC denied rehearing.

¶24 As of December 1, 2014, WERC had not conducted a certification election for the assistant district attorneys because no union had expressed interest in representing them by the September 15 deadline.  As a result, WASP was treated as decertified by WERC and the Office of State Employee Relations as of September 15, 2014.

¶25 On January 15, 2015, WASP filed a petition for judicial review (Case No. 15CV501) pursuant to Wis. Stat. §§ 227.52 and 227.53 seeking an order setting aside WERC's decision to deny WASP a certification election.[19]  WASP's petition also sought an order tolling the December 1 statutory deadline for holding certification elections until such elections could be held, and an order that WERC pay WASP's attorney fees and costs.

### C.  Consolidation and Appeal

¶26 On February 25, 2015, these five cases were consolidated.  Shortly thereafter, the parties filed cross-motions for summary judgment.  The Unions argued that Wis. Admin. Code chs. ERC 70 and 80 were invalid because they

---

[19] The State of Wisconsin and the Office of State Employee Relations, by and through the Wisconsin Department of Justice, filed a notice of appearance as of right under Wis. Stat. § 227.53(1)(d), requesting that they be permitted to participate as a party or interested person.  It does not appear from the record that that request was ever granted.

irreconcilably conflict with the statutory mandate. First, the use of "shall" in Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b) mandates annual certification elections; therefore, WERC cannot make certification elections contingent on the filing of a petition for election because it would contravene the statutory mandate. Second, the legislature does require elsewhere that unions file petitions of interest under certain circumstances; therefore, the absence of a statutory requirement for such a petition here means that the legislature did not intend for there to be any requirement. The Unions also argued that immediate decertification on September 15 contravenes the statute because it results in a certification period of less than one year.

¶27 WERC argued that its rules were reasonable given the requirements of the statute and the realities of conducting elections. First, "shall" can and should be construed in this context as directory, particularly in light of the fact that it would be absurd to compel an election where there are no names on the ballot. In this regard, requiring a petition for election is reasonable given the statutory requirement that the ballot contain the names of labor organizations having an interest and the fact that there is no presumption of interest for incumbents. Second, it is reasonable to require that the petition be filed by September 15 given the logistical difficulties of conducting elections on or before December 1. WERC also argued that decertifying the incumbent union on

17

September 15 was at least equally as reasonable as decertifying on December 1.

¶28 On July 31, 2015, the circuit court issued its decision and order. It declared invalid "those provisions in [Wis. Admin. Code chs.] ERC 70 and 80 requiring an existing exclusive representative to file a [petition for election] in order to qualify for a recertification election." Consequently, it reversed WERC's decisions denying the Unions certification elections; issued a writ of prohibition restraining WERC from enforcing invalid provisions; and ordered that WERC conduct certification elections for the Unions, to be held simultaneously with the December 1, 2015 elections. The circuit court also ordered that, if the Unions win, their representational status shall be treated as uninterrupted.[20] Specifically, the circuit court found that "shall" is used mandatorily in Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b); that WERC had neither express nor implied power to impose a condition precedent to its statutorily mandated duty; and that such a requirement was unnecessary because an incumbent labor organization has "a real, de facto and legal interest in continued representation."

¶29 WERC appealed. On October 12, 2016, the court of appeals affirmed. See WASP, 372 Wis. 2d 347. The court of appeals held that "shall" is mandatory in Wis. Stat.

_____

[20] The circuit court's order did not address the Unions' request for attorney fees and costs.

18

§§ 111.70(4)(d)3.b. and 111.83(3)(b), and that, therefore, making annual elections contingent on the filing of a petition for election is in direct conflict with the legislative mandate. Id., ¶¶19, 23. It further held that a current representative labor organization has a continuing interest in representation, countering WERC's claim that, without a petition, WERC could not otherwise know which labor organizations have an interest in representation, that is, which labor organizations should be included on the ballot. Id., ¶21.

¶30 WERC petitioned for review. On February 13, 2017, we granted the petition and now reverse.

## II. STANDARD OF REVIEW

¶31 "'Resolving an alleged conflict between a statute and an interpretive rule requires statutory interpretation,' which is a question of law that we review de novo . . . ." Mallo v. DOR, 2002 WI 70, ¶14, 253 Wis. 2d 391, 645 N.W.2d 853 (quoting Seider v. O'Connell, 2000 WI 76, ¶26, 236 Wis. 2d 211, 612 N.W.2d 659); see also Wis. Citizens Concerned for Cranes & Doves v. DNR, 2004 WI 40, ¶6, 270 Wis. 2d 318, 677 N.W.2d 612 ("The nature and scope of an agency's powers are issues of statutory interpretation.").

## III. ANALYSIS

¶32 There are two issues on this appeal. First, we consider whether WERC exceeded its statutory authority under Wis. Stat. ch. 111 when it promulgated Wis. Admin Code chs. ERC 70 and 80. We conclude that WERC did not exceed its authority

because it has express authority under Wis. Stat. ch. 111 to promulgate rules that require a demonstration of interest from labor organizations interested in representing collective bargaining units; consequently, we reinstate WERC's orders dismissing the Unions' petitions for election as untimely.

¶33  Second, we consider the subsidiary issue of whether WERC may decertify a current representative labor organization on September 15 where there are no timely petitions for election filed.   We conclude that WERC may decertify a current representative labor organization on September 15, or at the expiration of the collective bargaining agreement, whichever occurs later, where there are no timely petitions for election filed because the plain language of the statute requires WERC to conduct elections on or before December 1.

A.  Whether WERC Exceeded Its Statutory Authority

¶34  We consider first whether WERC exceeded its statutory authority under Wis. Stat. ch. 111 when it promulgated Wis. Admin. Code chs. ERC 70 and 80.   In short, WERC argued that these rules are lawful because they were promulgated pursuant to WERC's broad authority under Wis. Stat. §§ 111.71(1) and 111.94(1) to create reasonable and proper rules for administering elections, and because the rules are consistent with the statutory text and legislative intent.   In short, the Unions argued that the statutes mandate that WERC hold an annual certification election, and that, therefore, WERC cannot make

holding that annual election contingent on the filing of a petition for election.

¶35 We conclude that WERC did not exceed its statutory authority because it has express authority under Wis. Stat. ch. 111 to promulgate rules that require a demonstration of interest from labor organizations interested in representing collective bargaining units; consequently, we reinstate WERC's orders dismissing the Unions' petitions for election as untimely.

### 1. General principles

¶36 "[T]he court shall declare [a] rule invalid if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was promulgated without compliance with statutory rule-making procedures." Wis. Stat. § 227.40(4)(a); see also Wis. Stat. § 227.10(2) ("No agency may promulgate a rule which conflicts with state law."); Cranes & Doves, 270 Wis. 2d 318, ¶14 ("[I]f an administrative rule conflicts with an unambiguous statute or a clear expression of legislative intent, the rule is invalid.").

¶37 Here, the Unions have challenged Wis. Admin. Code chs. ERC 70 and 80 as exceeding WERC's statutory authority. "In determining whether an administrative agency exceeded the scope of its authority in promulgating a rule, we must examine the enabling statute to ascertain whether the statute grants express or implied authorization for the rule." Cranes & Doves, 270 Wis. 2d 318, ¶14. In this regard, "an agency's enabling statute

21

is to be strictly construed" because "agencies have 'only those powers which are expressly conferred or which are necessarily implied by the statutes under which it operates.'" Id. (quoting Kimberly-Clark Corp. v. PSC, 110 Wis. 2d 455, 461-62, 329 N.W.2d 143 (1983)).

¶38 "Rule-making authority is expressly conferred on an agency [to] promulgate rules interpreting the provisions of any statute enforced or administered by the agency, if the agency considers it necessary to effectuate the purpose of the statute . . . ." Wis. Stat. § 227.11(2)(a); see also Wis. Hosp. Ass'n v. Nat. Res. Bd., 156 Wis. 2d 688, 705-06, 457 N.W.2d 879 (Ct. App. 1990) ("To expressly authorize a rule, the enabling statute need not spell out every detail of the rule. If it did, no rule would be necessary. Accordingly, whether the exact words used in an administrative rule appear in the statute is not the question.").

¶39 This principle has been characterized in the case law as the "elemental approach." See Cranes & Doves, 270 Wis. 2d 318, ¶14 (citing Wis. Hosp. Ass'n, 156 Wis. 2d at 705-06) ("Wisconsin has adopted the 'elemental' approach to determining the validity of an administrative rule, comparing the elements of the rule to the elements of the enabling statute, such that the statute need not supply every detail of the rule.") Under the elemental approach, "the reviewing court should identify the elements of the enabling statute and match the rule against those elements. If the rule matches the

22

statutory elements, then the statute expressly authorizes the rule." Wis. Hosp. Ass'n, 156 Wis. 2d at 706.

    2.  WERC did not exceed its statutory authority
  in promulgating Wis. Admin. Code chs. ERC 70 and 80.

¶40  The first statute at issue is MERA, see Wis. Stat. §§ 111.70-111.77, which applies to SEIU.  The second statute at issue is SELRA, see Wis. Stat. §§ 111.81-111.94, which applies to WASP.  The question is whether WERC exceeded its authority under MERA or SELRA when it promulgated Wis. Admin. Code chs. ERC 70 and 80, respectively.  Specifically, the Unions challenge the requirement that any labor organizations interested in representing collective bargaining units timely submit a completed petition for election.  See Wis. Admin. Code §§ ERC 70.03 and 80.03.

¶41  The statutes mandate that WERC do five things:

1.  Conduct an annual election to certify the representative of a collective bargaining unit that contains an employee no later than December 1;

2.  Include on the ballot the names of all labor organizations having an interest in representing the employees participating in the election;

3.  Certify any representative that receives at least 51 percent of the votes of all the employees in the collective bargaining unit;

4.  Decertify the current representative if no representative receives at least 51 percent of the votes of all the employees in the collective bargaining unit; and

5.  Assess and collect a certification fee for each election conducted.

See Wis. Stat. §§ 111.70(4)(d)3.b., c. and 111.83(3)(b).

23

¶42 A mandate is a command, and "'[c]ommand includes permission. To mean to command any act to be done, and not to mean to permit it to be done, is impossible.'" See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 193-94 (2012) (quoting Jeremy Bentham, "Nomography," in 3 The Works of Jeremy Bentham 231, 262 (John Bowring ed., 1843)). Therefore, the statutory mandates are also statutory authorizations, and "[a]uthorization of an act also authorizes a necessary predicate act." Id. at 192 (explaining the Predicate-Act Canon); see also Estate of Miller v. Storey, 2017 WI 99, ¶52 n.21, 378 Wis. 2d 358, 903 N.W.2d 759. Therefore, WERC is expressly authorized under the statute to execute any predicate acts which are necessary to carrying out its mandated duties.

¶43 One of WERC's mandated duties is to include on the ballot only those labor organizations having an interest in representation. In order to include on the ballot only those labor organizations "having an interest," WERC must necessarily determine which labor organizations have such an interest.[21] Thus, it is expressly authorized to do so; that is, it is within WERC's express statutory authority to determine which labor organizations have an interest in being on a certification election ballot.

---

[21] We briefly note here that there is no statutory indication that past representation triggers a presumption of interest in future representation. As will be discussed below, the legislature knows full well how to indicate when such a presumption applies. See infra ¶45.

¶44 WERC is also expressly authorized to "adopt reasonable [] rules relative to the exercise of its powers and authority and proper rules to govern its proceedings and to regulate the conduct of all elections and hearings." Wis. Stat. §§ 111.71(1) and 111.94(1). "When an administrative agency promulgates regulations pursuant to a power delegated by the legislature, we construe those regulations together with the statute to make, if possible, an effectual piece of legislation in harmony with common sense and sound reason." DOR v. Menasha Corp., 2008 WI 88, ¶45, 311 Wis. 2d 579, 754 N.W.2d 95. Here, the requirement that labor organizations file a brief form indicating their interest in representing the employees is a reasonable means by which to determine which unions have that interest because it effectuates the statute and is "in harmony with common sense and sound reason."[22] Id.

¶45 In this regard, we reject the argument that the rules were not necessary because a current representative has a continuing interest in representing the bargaining unit. See Wis. Stat. § 227.11(2)(a) ("[A] rule is not valid if the rule exceeds the bounds of correct interpretation."). This conclusion is actually an assumption, but it has no basis in the text of Wis. Stat. § 111.83(3)(b) and is refuted by the context of surrounding provisions, specifically § 111.83(3)(a). See State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶46,

---

[22] See infra note 31.

271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes."). Section 111.83(3)(a), which addresses the situation where questions regarding representation arise at times other than certification elections, states in relevant part as follows:

> Whenever a question arises concerning the representation of employees in a collective bargaining unit . . . [t]here shall be included on any ballot for the election of representatives the names of all labor organizations having an interest in representing the employees participating in the election as indicated in petitions filed with the commission. The name of any existing representative shall be included on the ballot without the necessity of filing a petition.

(Emphasis added.) Although not applicable to the facts here,[23] this provision demonstrates that the legislature is fully capable of specifying where an assumption of continuing interest applies; thus, we should not read in that assumption where it is not specified. See Scalia & Garner, supra ¶42 at 93 ("Nothing is to be added to what the text states or reasonably implies (casus omissus pro omisso habendus est). That is, a matter not covered is to be treated as not covered."); see also Heritage

---

[23] Similarly, other provisions of Wis. ch. 111 that mention "petitions" are not relevant to the facts here: Wis. Stat. §§ 111.70(3)(a)4., 111.70(4)(d)5., 111.825(4) and (5), and 111.84(1)(d). These provisions address either a situation where there is no current representative or a situation where an employer is challenging a current representative's status.

Farms, Inc. v. Markel Ins. Co., 2009 WI 27, ¶14, 316 Wis. 2d 47, 762 N.W.2d 652; id., ¶14 n.9.[24]

¶46 We also reject the argument that there is an irreconcilable conflict between the enabling statute and the rule. See Wis. Stat. § 227.10(2) ("No agency may promulgate a rule which conflicts with state law."). This conclusion rests on the premise that the statute mandates an annual certification election without regard to whether there is any labor organization to elect. Taken to its logical end, however, this premise would compel the absurd result that WERC is required to conduct an election where there is nothing and no one for whom to vote. See Kalal, 271 Wis. 2d 633, ¶46 ("[S]tatutory language is interpreted . . . to avoid absurd or unreasonable results."). Not only is it factually absurd to conduct an election where there are no participants, but the statutory definition of "election" presumes that there is at least one labor organization on the ballot for which employees can vote, see supra note 5, and neither MERA nor SELRA provide guidance for a write-in election. Moreover, the statutes do not provide any procedure for how a current representative would remove itself

---

[24] We note further that there is no textual basis to treat incumbents and non-incumbents differently under Wis. Stat. § 111.83(3)(b), and that doing so may raise an equal protection problem. Thus, this interpretation should be avoided. See Blake v. Jossart, 2016 WI 57, ¶27, 370 Wis. 2d 1, 884 N.W.2d 484; Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 247 (2012) ("A statute should be interpreted in a way that avoids placing its constitutionality in doubt.").

27

from the ballot if it no longer wished to represent the employees; thus, if we were to read in a presumption of continuing interest, it is unclear how that presumption could be defeated where a current representative wants to disclaim interest.

¶47 In sum, we conclude that WERC did not exceed its statutory authorization when it promulgated Wis. Admin. Code chs. ERC 70 and 80 because its power to require a petition for election as a demonstration of interest is necessarily authorized by the statutory mandate that the ballot "shall" include only the names of labor organizations "having an interest" in representation.

3.  Consequently, WERC's orders dismissing the Unions' petitions for certification elections are reinstated.

¶48 Below, because it concluded that the rules requiring a petition for election were invalid, the circuit court ordered that WERC's decisions and orders dismissing the Unions' petitions for certification be reversed.  The court of appeals affirmed.  See WASP, 372 Wis. 2d 347, ¶25.  Here, because we hold that the rules requiring a petition for election are valid, we reverse the court of appeals and consequently order that WERC's decisions and orders dismissing the Unions' petitions for election be reinstated.

B.  Whether WERC May Decertify On September 15

¶49 We consider second the subsidiary issue of whether WERC may decertify a current representative labor organization on September 15 where there are no timely petitions for election

28

filed.[25] In short, WERC argues that, because its rules requiring a petition for election are valid, it follows that WERC may decertify a current representative labor organization at the deadline for filing because that incumbent is treated as if it had failed to obtain the required 51 percent of the vote. In short, the Unions argue that the statutes permit decertification only where there has been an annual certification vote.

¶50 We conclude that WERC may decertify a current representative labor organization on September 15, or at the expiration of the collective bargaining agreement, whichever occurs later, where there are no timely petitions for election filed because the plain language of the statute requires WERC to conduct elections on or before December 1.

¶51 "[S]tatutory interpretation begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Kalal, 271 Wis. 2d 633, ¶45. The statutes state in relevant part as follows:

> If no representative receives at least 51 percent of the votes of all of the [employees] in the collective bargaining unit, at the expiration of the collective

---

[25] Below, because it concluded that the rules requiring a petition for election were invalid, the circuit court did not reach the issue of when WERC may decertify a current representative labor organization if no petitions for election—or only untimely petitions for election—are filed. The court of appeals also declined to reach this issue. See WASP, 2016 WI App 85, ¶24, 372 Wis. 2d 347, 888 N.W.2d 237. We note, however, that the parties argued this issue in their briefing here, and in the circuit court and court of appeals below; thus, this issue was not forfeited.

bargaining agreement, the commission shall decertify the current representative and the [employees] shall be nonrepresented.

Wis. Stat. §§ 111.70(4)(d)3.b. and 111.83(3)(b). Each statute also requires that WERC conduct the certification election "no later than December 1."[26] Id.

¶52 The phrase "no later than December 1" is inclusive of dates on or before December 1. See Bryan A. Garner, Legal Usage 606 (3rd ed. 2011) ("no later than (= on or before)"); see also Wis. Stat. § 990.01(1) ("All words and phrases shall be construed according to common and approved usage . . . ."); Kalal, 271 Wis. 2d 633, ¶45 ("Statutory language is given its common, ordinary, and accepted meaning . . . ."); Scalia & Garner, supra ¶42 at 69 ("Words are to be understood in their ordinary, everyday meanings——unless the context indicates that they bear a technical sense."). Therefore, the statute authorizes[27] WERC to hold elections at any time on or before December 1; and in fact, WERC did hold certification elections for different labor organizations between November 1—21 in the fall of 2014. Where a certification election is held prior to December 1, it is possible that the results of that election will become available prior to December 1; when the results of

---

[26] Wisconsin Stat. § 111.70(4)(d)3.b. actually provides two election dates: December 1 for school district employees and May 1 for general municipal employees who are not school district employees. As noted above, see supra ¶14 note 11, the employees SEIU sought to represent are school district employees; thus, the December 1 date applies.

[27] See supra ¶42.

the election become available, WERC "shall certify any representative that receives at least 51 percent of the votes" and, "[i]f no representative receives at least 51 percent of the votes . . . shall decertify the current representative and the [employees] shall be nonrepresented." Wis. Stat. §§ 111.70(4)(d)3.b., 111.83(3)(b). Therefore, decertification before December 1 is consistent with the plain meaning of the statutory language, so long as WERC has established that the representative will not receive the requisite number of votes and there is no collective bargaining agreement in place that would otherwise dictate when decertification occurs.

¶53 In this regard, failure to timely file and failure to be elected are logically and legally equivalent: where no petition for election demonstrating interest in representing a particular collective bargaining unit is timely filed, there are no labor organizations to put on the ballot;[28] where there are no labor organizations to put on the ballot, there is no need to conduct a certification election;[29] where there is no certification election, the current representative labor organization will receive zero votes;[30] and zero votes is less

---

[28] See supra ¶¶40-47.

[29] See supra ¶46.

[30] To hold that, where there is no certification election, a current representative labor organization could avoid decertification would be an atextual and absurd result because, then, a labor organization could avoid decertification by not filing a petition for election (assuming, of course, that no other labor organization files one either).

31

than "at least 51 percent of the votes of all of the [employees] in the collective bargaining unit."  Therefore, a current representative labor organization's failure to timely file is logically equivalent to an election in which a current representative labor organization does not receive at least 51 percent of the votes of all employees in the collective bargaining unit, and we can identify no statutory or other legal basis on which they should be distinguished.

¶54 Thus, WERC may decertify a current representative labor organization on September 15, or at the expiration of the collective bargaining agreement, whichever occurs later, when no timely petition for election is filed because September 15 is within the inclusive range of dates on which WERC may conduct elections and subsequently certify or decertify labor organizations, and decertification by failure to be elected and decertification by failure to timely file a petition for election are not logically or legally distinguishable.[31]

---

[31] The reasonableness of September 15 as a deadline for petitions for election was not raised as an issue here, but we would note that September 15 seems a reasonable date on which to set the deadline for petitions for election, given the logistical requirements of conducting an election: where a petition for election is timely filed and an election is then to be conducted, WERC must (1) obtain and coordinate information from the employer and the interested labor organization to determine which employees are eligible to vote; (2) set a date for the election and determine how best to conduct the election, with time enough to notify employees of when and how they should vote; and (3) conduct the election.  And it must do all of those things for hundreds of labor organizations, representing tens of thousands of employees; for example, in the fall of 2014, WERC conducted 305 certification elections, involving 54,662

(continued)

IV. CONCLUSION

¶55 There are two issues on this appeal. First, we consider whether WERC exceeded its statutory authority under Wis. Stat. ch. 111 when it promulgated Wis. Admin Code chs. ERC 70 and 80. We conclude that WERC did not exceed its authority because it has express authority under Wis. Stat. ch. 111 to promulgate rules that require a demonstration of interest from labor organizations interested in representing collective bargaining units; consequently, we reinstate WERC's orders dismissing the Unions' petitions for election as untimely.

¶56 Second, we consider the subsidiary issue of whether WERC may decertify a current representative labor organization on September 15 where there are no timely petitions for election filed. We conclude that WERC may decertify a current representative labor organization on September 15, or at the expiration of the collective bargaining agreement, whichever occurs later, where there are no timely petitions for election filed because the plain language of the statute requires WERC to conduct elections on or before December 1.

¶57 Thus, we reverse the decision of the court of appeals and reinstate WERC's orders dismissing the Unions' petitions for election.

---

employees. Given that these responsibilities must be fulfilled such that all elections are completed on or before December 1, September 15 would seem a reasonable deadline for petitions for election.

*By the Court*.-The decision of the court of appeals is reversed.

¶58 ANN WALSH BRADLEY, J. *(dissenting).* This case represents yet another decision of this court that disenfranchises voters.[1]

¶59 Although the texts of the applicable statutes mandate that annual recertification elections be held so that union members can vote for a representative, the majority concludes to the contrary. It instead embraces conflicting administrative code provisions that allow the Wisconsin Employment Relations Commission (WERC) to cancel elections.

¶60 To justify this conclusion the majority engages in analytical gymnastics, contorting its discussion to: (1) dodge the main issue in the case, relegating its analysis of the dispositive question to a single conclusory paragraph; (2) implicitly determine that "shall" does not mean "shall"; and (3) rewrite the statute by including a requirement that does not exist in the text and which defeats the statute's purpose.

¶61 Because I conclude, as did the circuit court and a unanimous court of appeals, that "shall" in fact does mean "shall" and that the statutes and administrative code provisions are in irreconcilable conflict, I respectfully dissent.

I

¶62 Taking its cue from WERC, the majority leads the reader astray by focusing its analysis on WERC's authority to

---

[1] See League of Women Voters of Wis. Educ. Network, Inc. v. Walker, 2014 WI 97, 357 Wis. 2d 360, 851 N.W.2d 302; Milwaukee Branch of NAACP v. Walker, 2014 WI 98, 357 Wis. 2d 469, 851 N.W.2d 262.

regulate recertification elections pursuant to Wis. Stat. §§ 111.71(1) and 111.94(1). See majority op., ¶¶34-45. Consequently, the issue as presented and decided by both the circuit court and court of appeals is obscured.

¶63 As the court of appeals aptly stated: "The Commission spends a considerable amount of time discussing its legislatively delegated authority to promulgate reasonable rules related to the annual election statutes . . . [T]his is not the issue on appeal." Wis. Ass'n of State Prosecutors v. Wis. Emp't Relations Comm'n, 2016 WI App 85, ¶22, 372 Wis. 2d 347, 888 N.W.2d 237. Yet the majority continues down this path, spending the bulk of its analysis on an ancillary issue.

¶64 Contrary to the majority's framing of the issue, this case presents a rather straightforward question of statutory interpretation. The issue is whether there is a conflict between the relevant statutes and administrative code provisions.

¶65 The majority relegates its analysis of this issue to a single, conclusory paragraph. See majority op., ¶46. In its cursory analysis of the conflict, the majority ascribes great import to an assertion that the unions' preferred statutory construction "would compel the absurd result that WERC is required to conduct an election where there is nothing and no one for whom to vote." Majority op., ¶46. According to the majority, this absurdity would result because "the statutes do not provide any procedure for how a current representative would remove itself from the ballot if it no longer wished to

2

represent the employees" and it is thus "unclear" what is to happen if a current representative wants to disclaim an interest in representing a bargaining unit. Id.

¶66 This assertion ignores the larger context of labor law in which this case arises. A union can avoid its duty to bargain or remove itself from a ballot by unequivocally disclaiming further interest in representing a bargaining unit.[2] The majority's "absurd" consequence is thus easily avoidable through a simple disclaimer process that is available at any time and is already in use in both federal and state labor law. See Dycus v. Nat'l Labor Relations Bd., 615 F.2d 820, 826 (9th Cir. 1980); see also 1 Emp. and Union Member Guide to Labor Law § 3:12 (2017).

II

¶67 Administrative agencies do not have powers superior to those of the legislature. Debeck v. Wis. Dep't of Nat. Res., 172 Wis. 2d 382, 387-88, 493 N.W.2d 234 (Ct. App. 1992). Thus, even if the majority were correct in focusing its analysis and conclusions on WERC's authority to promulgate rules regarding

---

[2] Baraboo Joint Sch. Dist. No. 1, WERC Dec. No. 14885-B at 8 (Mar. 10, 1977) ("The commission has allowed a labor organization to withdraw from an election if it indicates to the commission that it does not desire to appear on the ballot and does not desire to represent the employe[e]s."); see also Wis. Law Enf't Ass'n v. AFSCME Council 24, WERC Dec. No. 31397-B at 32 (Aug. 1, 2006) (citing Bake-Line Prods., Inc., 329 NLRB 247, 249 (1999) (explaining that "an exclusive bargaining agent may avoid its statutory duty to bargain on behalf of the unit it represents by unequivocally and in good faith disclaiming further interest in representing the unit . . . .")).

3

recertification elections, it is to no avail.  An administrative agency may not promulgate a rule that conflicts with state law. Seider v. O'Connell, 2000 WI 76, ¶21, 236 Wis. 2d 211, 612 N.W.2d 659; Wis. Stat. § 227.10(2).  "When a conflict occurs between a statute and a rule, the statute prevails."  Debeck, 172 Wis. 2d at 388 (citation omitted).

¶68  The dispositive question is whether SELRA[3] and MERA[4] conflict with the petition requirement in Wis. Admin. Code chs.

---

[3] Wisconsin Stat. § 111.83(3)(b) provides in relevant part:

> Annually, no later than December 1, the commission shall conduct an election to certify the representative of a collective bargaining unit that contains a general employee.  There shall be included on the ballot the names of all labor organizations having an interest in representing the general employees participating in the election  . . . The commission shall certify any representative that receives at least 51 percent of the votes of all of the general employees in the collective bargaining unit.  If no representative receives at least 51 percent of the votes of all of the general employees in the collective bargaining unit, at the expiration of the collective bargaining agreement, the commission shall decertify the current representative and the general employees shall be nonrepresented. . . .

[4] Wisconsin Stat. § 111.70(4)(d)3.b. sets forth in relevant part:

> Annually, the commission shall conduct an election to certify the representative of the collective bargaining unit that contains a general municipal employee.  The election shall occur no later than December 1 for a collective bargaining unit containing school district employees and no later than May 1 for a collective bargaining unit containing general municipal employees who are not school district employees.  The commission shall certify any representative that receives at least 51 percent of the votes of all of the general municipal employees in

(continued)

4

ERC 70 and 80.[5] In order to answer this question, I must examine first whether "shall" does indeed mean "shall." Is it mandatory or merely directory?

¶69 Statutory interpretation begins with the language of the statute. <u>State ex rel. Kalal v. Cir. Ct. for Dane Cty.</u>, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110. If the meaning of the statute is plain, we need not inquire further. <u>Id.</u>

¶70 The language of both SELRA and MERA is plain. Each statute provides that annually, "the commission <u>shall</u> conduct an election to certify the representative of a collective bargaining unit that contains a general . . . employee." Wis.

---

the collective bargaining unit. If no representative receives at least 51 percent of the votes of all of the general municipal employees in the collective bargaining unit, at the expiration of the collective bargaining agreement, the commission shall decertify the current representative and the general municipal employees shall be nonrepresented. . . .

[5] Wis. Admin. Code §§ ERC 70.01 and 80.01 state in relevant part:

. . . The existing exclusive representative of such employees that wishes to continue said representation, or any other labor organization interested in representing such employees, must file a petition on or before September 15 requesting the commission to conduct a secret ballot election to determine whether a minimum of 51 percent of the bargaining unit employees eligible to vote favor collective bargaining representation by the petitioner or another petitioning labor organization. If no timely petition is filed, the result is the same as if only the existing representative filed a timely petition and the election resulted in decertification of the existing representative. . . .

Stat. §§ 111.83(3)(b), 111.70(4)(d)3.b. (emphasis added). In other words, each requires that an election be held annually. Full stop. No conditions.

¶71 Wisconsin Admin. Code §§ ERC 70.01 and 80.01 allow WERC to cancel an election. See also Wis. Admin. Code §§ ERC 70.03(7)(b) and 80.03(7)(b) (explaining the consequences of failure to timely file a petition). Ignoring a line of analysis both the circuit court and court of appeals deemed dispositive, the majority implicitly determines that "shall" does not mean "shall" and that there is therefore no conflict between the statutes and WERC's administrative rules.

¶72 The word "shall" is ordinarily presumed to be mandatory when it appears in a statute. Vill. of Elm Grove v. Brefka, 2013 WI 54, ¶23, 348 Wis. 2d 282, 832 N.W.2d 121. However, "shall" may be construed as directory if necessary to carry out the legislature's clear purpose. Id.

¶73 In determining whether "shall" is mandatory or directory, I focus on two dispositive factors: the consequences resulting from each construction and the general object sought to be accomplished by the legislature.[6] See Karow v. Milwaukee Cty. Civil Serv. Comm'n, 82 Wis. 2d 565, 572, 263 N.W.2d 214

---

[6] In Karow v. Milwaukee Cty. Civil Serv. Comm'n, 82 Wis. 2d 565, 572, 263 N.W.2d 214 (1978), we set forth five factors to consider in determining whether "shall" as used in a statute is mandatory or directory: the inclusion or omission of a prohibition or a penalty in the statute, the consequences resulting from one construction or the other, the nature of the statute, the evil to be remedied, and the general object sought to be accomplished by the legislature.

(1978). Application of these factors here indicates that "shall" as used in Wis. Stat. §§ 111.83(3)(b) and 111.70(4)(d)3.b. is mandatory.

¶74 First, the majority's construction has significant and drastic consequences for employees. It denies blameless employees the right to vote for union representation if their union narrowly misses a deadline. As a result, employees not only lose their ability to vote on whether they are represented by a union, but also are stripped of their voice in negotiations with their employer, all because their union was less than an hour late filing a petition.[7] Conversely, the unions' interpretation protects against this harsh outcome.

¶75 Second, a directory construction would run afoul of the general object sought to be accomplished by the legislature. Counsel for WERC asserted at oral argument that a purpose of Act 10 is to enfranchise employees. Accepting WERC's assertion, annual recertification elections provide employees with greater opportunity to decide whether they will continue to be represented by their union.

¶76 Despite WERC's assertion that a purpose of Act 10 is the enfranchisement of voters, the majority's construction of the statute accomplishes the opposite. Instead of expanding employees' ability to vote on whether they are represented by a union, the majority opinion takes all choice away from

---

[7] See majority op., ¶15.

7

employees, leaving them without union representation regardless of their actual wishes.

¶77 I therefore conclude that "shall" as used in SELRA and MERA is mandatory. The majority does not engage in even a modicum of analysis on this point and thus provides no persuasive reason to depart from a mandatory construction of "shall."

¶78 Applying a mandatory construction of "shall" in Wis. Stat. §§ 111.83(3)(b) and 111.70(4)(d)3.b. leads to the conclusion that there is an irreconcilable conflict between these statutes and Wis. Admin. Code ERC §§ 70.01 and 80.01. Simply stated, the statutes mandate that there "shall" be an election, while the administrative code provisions allow an election to be cancelled.

III

¶79 The majority exacerbates this conflict by writing into the statute a requirement that does not exist in the text and which defeats the statute's purpose.

¶80 WERC's rules add an additional requirement to the conduct of an election——the filing of a petition. By creating a barrier that does not exist in the statutes, the WERC rules are necessarily in conflict with state law. See State ex rel. Castaneda v. Welch, 2007 WI 103, ¶59, 303 Wis. 2d 570, 735 N.W.2d 131. As previously discussed, when a statute and an administrative rule conflict, the statute prevails. Debeck, 172 Wis. 2d at 388. To avoid the conflict, the majority in essence writes a petition requirement into the statutes.

8

¶81 A reading of the surrounding context of the statutes at issue reveals that the legislature chose not to include a petition requirement. Chapter 111 is replete with statutory means by which an election may be triggered by the filing of a petition. See, e.g., Wis. Stat. §§ 111.70(3)(a)4., 111.70(4)(d)5., 111.825(4), 111.825(5), 111.83(3)(a), 111.84(1)(d).

¶82 The legislature thus knows full well how to write a petition requirement into a labor relations statute. In the case of Wis. Stat. §§ 111.83(3)(b) and 111.70(4)(d)3.b., it chose not to include one. The language of these statutes is clear. An election "shall" take place.

¶83 Additionally, the majority rewrites the statutes, inserting words to allow decertification of a bargaining representative in a manner the statutes do not contemplate. The statutes provide but one path to union decertification——the failure to gain 51% of the votes in an election. The WERC rules provide another——failure to file a petition by the stated deadline.

¶84 Wisconsin Stat. §§ 111.83(3)(b) and 111.70(4)(d)3.b. prescribe only one manner in which WERC may decertify a bargaining unit: "if no representative receives at least 51 percent of the votes of all of the general employees in the collective bargaining unit, at the expiration of the collective bargaining agreement, the commission shall decertify the current representative and the general employees shall be nonrepresented." In other words, an election is required as a

9

precondition for decertification. The statutes do not provide an additional manner in which a bargaining representative may be decertified.

¶85 Conversely, Wis. Admin. Code §§ ERC 70.03(7)(b) and 80.03(7)(b) provide that decertification is to occur "[i]f no timely petition is filed by any labor organization." This conflicts with the statute because it provides an additional avenue to decertification the statute does not contemplate. Again, "[w]hen a conflict occurs between a statute and a rule, the statute prevails." Debeck, 172 Wis. 2d at 388.

¶86 Instead of acknowledging this conflict, the majority adds words to the statute. It concludes that "failure to timely file and failure to be elected are logically and legally equivalent[.]" Majority op., ¶53. The majority's analytical gymnastics are unpersuasive, given that "failure to be elected" is the sole statutorily authorized manner for decertification. "Failure to timely file" can only be the "logical and legal" equivalent if the majority reads a petition requirement into the statute that simply is not there.

¶87 The majority's conclusion further runs afoul of Act 10's purported purpose to enfranchise employees. Instead of expanding employees' choice in whether they wish to be represented by a union, the majority's decision decertifies an elected representative without allowing employees to say a word about it.

¶88 Unlike the majority, I would uphold the purpose WERC asserts is behind Act 10——to enfranchise voters——and affirm the

court of appeals. I conclude that both SELRA and MERA are in irreconcilable conflict with the petition requirement in Wis. Admin. Code chs. ERC 70 and 80, and that "shall" means "shall."

¶89 Finally, I observe that in determining that "shall" does not mean "shall," the majority circumvents this court's recent interpretative trajectory. Indeed, when this court has been faced with a question of whether "shall" is mandatory or directory, it has overwhelmingly ruled on the side of a mandatory construction. Over the last ten years, in most contexts this court has repeatedly arrived at the conclusion that "shall" means "shall," i.e. it is of a mandatory nature.[8] During the same time period, this court has declined to apply "shall" as mandatory in only a few contexts, including those involving a sexually violent person committed pursuant to ch.

---

[8] See State v. Villamil, 2017 WI 74, ¶60, 377 Wis. 2d 1, 898 N.W.2d 482 ("[W]e conclude that the State has failed to rebut the presumption that 'shall' is mandatory" in operating after revocation penalty statutes); City of Eau Claire v. Booth, 2016 WI 65, ¶23, 370 Wis. 2d 595, 882 N.W.2d 738 ("The legislature's use of 'shall' in Wisconsin's OWI escalating penalty scheme . . . is mandatory . . . ."); Bank of New York Mellon v. Carson, 2015 WI 15, ¶23, 361 Wis. 2d 23, 859 N.W.2d 422 ("The context in which 'shall' is used in Wis. Stat. § 846.102(1) indicates that the legislature intended it to be mandatory."); State v. Hemp, 2014 WI 129, ¶27, 359 Wis. 2d 320, 856 N.W.2d 811 ("[W]e interpret 'shall' to be mandatory" in the context of expunction statutes); Vill. of Elm Grove v. Brefka, 2013 WI 54, ¶26, 348 Wis. 2d 282, 832 N.W.2d 121 (determining that "shall" is mandatory in statute providing for revocation of drivers license for refusal to take a test for intoxication); State v. Thompson, 2012 WI 90, ¶62, 342 Wis. 2d 674, 818 N.W.2d 904 (explaining that Wis. Stat. § 970.02(1)(a) imposes several mandatory duties on the circuit court); Watton v. Hegerty, 2008 WI 74, ¶19 n.13, 311 Wis. 2d 52, 751 N.W.2d 369 ("[W]e conclude that 'shall' has a mandatory meaning within § 51.30(4)(a).").

980, an undocumented immigrant, and now in this case, a voter in a union recertification election.[9]

¶90 Accordingly, for the reasons set forth above, I respectfully dissent.

¶91 I am authorized to state that SHIRLEY S. ABRAHAMSON joins this dissent.

---

[9] See State v. Reyes Fuerte, 2017 WI 104, ¶55, 378 Wis. 2d 504, 904 N.W.2d 773 (Abrahamson, J., dissenting) (by applying the harmless error rule, the majority essentially renders the word "shall" meaningless); State v. Romero-Georgana, 2014 WI 83, ¶114, 360 Wis. 2d 522, 849 N.W.2d 668 (Ann Walsh Bradley, J., dissenting) (explaining that the majority disregards the plain meaning of "shall" in Wis. Stat. § 971.08(2)); In re Commitment of Gilbert, 2012 WI 72, ¶¶87-89, 342 Wis. 2d 82, 816 N.W.2d 215 (Ann Walsh Bradley, J., dissenting) (observing that the majority finds ambiguity in a statute containing "shall" by ignoring the surrounding context).